860 So.2d 207 (2003)
STATE of Louisiana
v.
William E. OLIVIERI.
No. 03-KA-563.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*209 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alan D. Alario, II, Andrea F. Long, Richard R. Pickens, Assistant District Attorneys, Gretna, LA, for State.
Bruce G. Whittaker, Gretna, LA, for defendant-appellant.
Panel composed of THOMAS F. DALEY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, William Olivieri, was indicted by a Jefferson Parish grand jury on October 4, 2001 with one count of aggravated kidnapping, one count of armed robbery, and two counts of aggravated rape in violation of LSA-R.S. 14:44, 14:64, and 14:42. He pled not guilty and filed several pretrial motions. Defendant proceeded to trial on June 18, 2002. After a three-day trial, defendant was convicted as charged on all four counts by a unanimous twelve-person jury. He was sentenced on July 12, 2002 to life imprisonment for each of his aggravated kidnapping and two aggravated rape convictions and ninety-nine years of imprisonment for the armed robbery conviction. Each sentence was imposed without the benefit of parole, probation or suspension of sentence and was ordered to run consecutively with each other.
The State subsequently filed a multiple offender bill of information based on count two of the original indictment, armed robbery. The State alleged defendant to be a third felony offender based on a 1989 conviction for simple burglary and a 1990 conviction for forcible rape. Defendant denied the allegations contained in the multiple bill and after an August 7, 2002 hearing on the multiple bill, defendant was found to be a multiple offender. The trial court vacated defendant's original ninety-nine-year sentence as to count two, armed robbery, and imposed an enhanced sentence of life imprisonment, to run consecutively with the other three counts, without the benefit of parole, probation or suspension of sentence under LSA-R.S. 15:529.1.

FACTS
At approximately 2:15 p.m. on July 2, 2001, D.L.[1] left her office on the seventh floor of the AmSouth Bank building, located on North Causeway Boulevard in Metairie, to make a bank deposit and grab lunch. As she walked to her car on the first floor of the parking garage, she saw a man in front of her. The man walked left and D.L. walked right, toward her car. She unlocked her car with her keyless remote and put her keys and purse on the passenger seat. D.L. then heard someone approach from behind. She felt something pressed to the back of her head and was pushed into her car. The man, later determined to be defendant, told D.L. not to move. He took her cigarette from her and handcuffed her hands behind her back. He *210 then forced her to climb over the center console and into the passenger seat.
Defendant started the car and drove away with D.L. He told D.L. he needed her car to get out of town. D.L. was scared and begged the man not to rape or hurt her. He explained he would not hurt her and that he would let her go when he got far enough. They stopped for gas, in an area later determined to be New Orleans East, at which time defendant asked D.L. for her money and credit cards. He took off one of the handcuffs to allow her access to her purse after which D.L. gave defendant her wallet. Defendant repeatedly told D.L. not to turn around and not to look at him. After getting gas, they continued to drive on the interstate toward Slidell.
During the drive, defendant engaged D.L. in conversation telling her he was from Tennessee and that his mother had died. D.L. never looked at defendant but at one point turned briefly in his direction and saw a tattoo on his upper left arm.
Defendant took the Pearl River Turnabout exit and told D.L. they were stopping so he could look through her purse. He parked the car near an abandoned house or deer camp by a gravel pit and overhead train track, later determined to be Honey Island Swamp Road, put the handcuffs back on D.L., and blindfolded her. Defendant walked around to the passenger side of the car and opened the door. He lifted D.L.'s shirt, unfastened her pants and fondled her. He then forced her into the backseat of the car where he pulled down her pants and underwear and inserted his penis inside of her. Defendant did not wear a condom and D.L. begged him not to ejaculate inside of her. Defendant complied and ejaculated onto the floor of the car. He then penetrated D.L. again before ordering her to get dressed.
Defendant then forced D.L. back into the front passenger's seat and drove off looking for a place for D.L. to wash off his "gism." He continued back on the interstate and exited in Picayune, Mississippi. Defendant eventually located a creek under a bridge and drove toward it down a dirt path. He ordered D.L. out of the car and told her to walk toward the creek. Prior to D.L. exiting the car, defendant put a gun to her side and told her if anything happened she knew what would happen. D.L. understood this to mean if she screamed or ran, defendant would shoot her.
Defendant guided D.L. to the creek and made her face a cement block and put her hands upon it. Defendant then pulled down D.L.'s pants and underwear and fondled her again. He put her hand on his "private area" and told her to masturbate him. D.L. told defendant she could not do that so he vaginally penetrated her from behind. Defendant then forced D.L. to the creek and ordered her to squat down. He splashed water on her and ripped her underwear off to wipe her leg. He then threw her underwear into the creek and ordered her to get dressed.
Thereafter, defendant took D.L. to a Wal-Mart in Picayune where he released her. Upon releasing D.L., defendant wiped D.L.'s cell phone and house keys and gave them back to her. He took one of her business cards and a check out of her checkbook. He told D.L. to call the police and report that she had been carjacked but not raped. Defendant then drove off in D.L.'s car. D.L. never saw her attacker's face but later described her assailant as a white male, possibly Hispanic, approximately 35 years old, 5' 7" with a medium build, tan complexion, moustache, and dirty hands. She described a tattoo on his upper left arm and stated he had an odor similar to a mechanic.
*211 D.L. immediately called her father and her boss telling them what had happened. She then went into Wal-Mart and asked a lady to call the police. When the police arrived, she was taken to Crosby Memorial Hospital in Picayune where a rape kit examination was performed by Dr. Thaddeus Erato. Dr. Erato noted several small red scratch marks on each of D.L.'s wrists which were consistent with her description of being handcuffed. Dr. Erato testified that there were no tears or lacerations to the vaginal area but explained that such a finding does not indicate a rape did not occur. The rape kit evidence was subsequently processed by the FBI in its laboratory in Washington, D.C. where semen was detected on several of the vaginal swabs.
Meanwhile, at approximately 5:30-6:00 p.m., defendant parked D.L.'s car at Mickey's # 1 Quick Stop in Picayune and went to a nearby friend, Michael Gott's, house. Defendant told Gott he had stolen a car from a "pretty" lady in a bank parking lot. Gott testified that defendant had parked the car at Mickey's # 1 Quick Stop, which was four blocks from Gott's house, and that defendant wanted to get the car back after learning of a news broadcast relating to a kidnapping and assault. Gott drove defendant to Mickey's # 1 Quick Stop but the car was not there. Defendant went inside the convenience store, inquired about the car, and was told the police had towed it. Thereafter, Gott and defendant returned to Gott's house. They watched the news which reported the rape. After learning of the rape, Gott made defendant leave his house. One week later, Gott reported what he knew about the crimes to his parole officer and was subsequently interviewed by the FBI.
D.L.'s car was recovered by the Picayune Police Department and processed for evidence by the FBI. Several white stains were visible on the back seat of the car and additional stains were discovered on the rear floor mat and rear carpet by the use of a forensic light source. Testing of the stain specimens revealed the stains to be semen. DNA was developed from the semen found on the floor mat and the back seat cushion and was later determined to match defendant's DNA. Additionally, several latent fingerprints were developed from items found inside the vehicle. Two of the fingerprints were later matched to defendant. A black bandanna that did not belong to the victim was also found in the car. The victim testified she believed it was the bandanna that defendant used to blindfold her.
The FBI obtained an arrest warrant for defendant and subsequently arrested him on July 15, 2001. Upon his arrest, defendant waived his rights and gave a statement to the FBI. The statement was not recorded pursuant to FBI policy. According to the FBI agent's notes regarding the statement, defendant admitted to forcing the victim into her car at gun point using a black BB gun that looks like a real gun. Defendant stated that after handcuffing and blindfolding the victim, he drove to Picayune with the victim and released her after demanding all her money. He then parked the car at a convenience store and walked across the street to a strip mall where he threw the handcuffs into a dumpster. When he returned for the car, it was gone. He was told by the convenience store clerk that the police had towed it. Defendant then stated he returned to Louisiana with a friend and threw the gun into the Mississippi River. Defendant further stated he shaved off his moustache and the hair on top of his head. He did not discuss any sexual assault or rape of the victim during his statement.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant argues the trial court erred in refusing *212 to grant a mistrial after the State repeatedly referred to defendant's post-arrest silence during its opening statement and its direct examination of Agent David Riker. Defendant asserts the trial court's instruction attempting to cure the problem simply made matters worse by further emphasizing defendant's post-arrest silence. While he admits not every reference to a defendant's post-arrest silence mandates a mistrial or reversal, defendant contends the State did more than make an oblique reference to his post-arrest silence by developing the details of his post-arrest silence in its case in chief.
The State responds that the brief reference to defendant's post-arrest silence was merely an effort to provide the jury with a sequential order of events regarding the investigation of the case and to explain under what circumstances defendant terminated his interview with Agent David Riker. The State maintains no attempt was made to impeach defendant by referring to his post-arrest silence. The State further contends any error does not warrant reversal because the evidence of defendant's guilt was overwhelming.
During its opening statements, the State stated:
On July 15th, Agent Riker arrested the Defendant. He arrested him at a hotel at Chef Highway and Downman Road, where he had been staying in a room obtained for him by a friend. The Defendant was taken to FBI headquarters. He was read his rights, allowed to smoke, given a soft drink, and he made a statement. He confessed to David Riker that he did, indeed, kidnap the victim and rob her. He said that he handcuffed her, he said that he used a weapon, and he said that he threw both the handcuffs and the weapon away. He said he was the only one involved in that crime. And then when Agent Riker asked him about the rapes, the Defendant decided he didn't want to talk any more.
Defense counsel immediately objected and moved for a mistrial on the basis the State referred to the defendant invoking his right to remain silent and made an implicit reference to the defendant invoking his right to counsel. The trial court denied defendant's request for a mistrial.
Thereafter, during the State's direct examination of Agent David Riker, the State asked Agent Riker to summarize the oral statement defendant gave to him upon defendant's arrest. Agent Riker recounted the contents of the statement and then concluded with the following testimony:
When the Defendant was done speaking, I then told him that I believe you're leaving some of the facts and details out of the incident; I want to go over it again. And I told him I think you know where I'm going with this. At that point the Defendant put his head down. He said, I need a lawyer, I'm sorry. Don't be mad at me, but I feel more comfortable with a lawyer.
Defense counsel objected and again moved for a mistrial based on the impermissible reference to defendant's post-arrest silence and invocation of his right to counsel. The State responded the testimony was a mere account of what defendant said and noted that any prejudice could be cured by an instruction. Defense counsel argued an instruction would not cure the prejudice and insisted on a mistrial. The trial judge denied the motion for a mistrial and instructed the jury that a defendant has a right to remain silent and is not required to testify. The trial judge further explained a defendant has a right to obtain counsel. He instructed the jury that the fact defendant chose to remain silent at a certain point and made a request for an attorney cannot be held *213 against him. The trial judge pointed out that the testimony was only allowed into evidence to show how the interview ended.
In Doyle v. Ohio, 426 U.S. 610, 620, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that reference to a defendant's silence at the time of his arrest and after he has received the Miranda warnings for impeachment purposes violates the defendant's due process rights. The Supreme Court explained, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested ... it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle v. Ohio, 426 U.S. at 617-618, 96 S.Ct. at 2244-2245, 49 L.Ed.2d at 97-98.
In State v. Montoya, 340 So.2d 557 (La. 1976), the Louisiana Supreme Court found that reference to a defendant's post-arrest silence was reversible error even when the defendant does not take the stand. The Supreme Court found that the reasoning in Doyle should apply with even stronger force when a defendant does not take the stand. The Supreme Court stated:
In the instant case the defendant did not take the stand. Thus, there is even less justification here for the State to call attention to his silence at the time of arrest than there was in Doyle, because the argument cannot be made that he was under cross-examination and thus fair game for impeachment by use of his silence at the time of his arrest. Therefore, we conclude it was clearly reversible error for the trial court to permit the State to use the arrested person's silence against him at trial.
Montoya, supra, at 560.
Thus, a prosecutor cannot make reference to the fact an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused, for the first time at trial. State v. Arvie, 505 So.2d 44, 46 (La.1987); State v. Ledesma, 01-1413 (La.App. 5 Cir.4/30/02), 817 So.2d 390, 393.
In contrast, an oblique and obscure reference to a defendant's post-arrest silence, where the examination does not stress the right to remain silent or attempt to elicit testimony regarding the defendant's failure to respond to police questioning, does not constitute reversible error. State v. Ledesma, supra at 393. Thus, the State may pursue a line of questioning that attempts to summarize the extent of the investigation, when such questions are not designed to exploit the defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense. Id.
Under LSA-C.Cr.P. art. 771, when the prosecutor or a witness makes a reference to a defendant's post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. In such cases where the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant. State v. Kersey, 406 So.2d 555, 559 (La.1981). The granting of a mistrial is within the discretion of the trial court if the trial court is satisfied that an admonition is not sufficient to assure the defendant a fair trial. State v. Procell, 365 So.2d 484, 491 (La.1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2164, 60 L.Ed.2d 1046 (1979). A brief reference to a defendant's post-arrest silence does not mandate a mistrial or reversal when the trial as a *214 whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes. State v. Ledesma, supra at 393.
In State v. Kersey, supra, the defendant challenged the prosecutor's examination of the arresting officer on the basis it elicited testimony regarding defendant's post-arrest silence. The prosecutor asked the arresting officer, "[d]id [defendant] give any further statements or did he assert his right to remain silent at this point?" to which the arresting officer responded defendant asserted his right. The Supreme Court found the reference to defendant's silence, when considered in context with the rest of the officer's testimony, was made in an attempt to show that the entire statement made to the officers had been provided to the jury. The Supreme Court noted the testimony showed defendant was advised of his Miranda rights and then willingly answered a succession of questions. The Supreme Court further noted the reference to defendant's post-arrest silence "arose at the close of the officer's testimony and was more a way of exploring how the interrogation was concluded than an effort to call attention to the silence." Id., at 559. The Supreme Court held defendant was not prejudiced by the reference to his post-arrest silence and, therefore, a reversal of the conviction was not warranted.
In the present case, Agent Riker's testimony, which briefly referenced defendant's post-arrest silence, was elicited for the purpose of presenting to the jury a description of how the police investigation culminated and showing the jury that defendant's entire statement was before them. The prosecutor did not pose a specific question regarding the defendant's post-arrest silence, but rather inquired about the contents of the statement defendant made to police. Furthermore, the prosecutor did not draw attention to the fact defendant invoked his right to remain silent subsequent to giving a statement. After Agent Riker testified that defendant terminated the statement, the prosecutor did not pursue the issue of defendant's post-arrest silence but rather moved on and questioned Agent Riker on an unrelated topic pertaining to the photographing and fingerprinting of defendant and gathering of additional evidence. The State did nothing further to emphasize defendant's post-arrest silence or try to get the jury to make a negative inference from his silence. The judge also admonished the jury that it could not hold defendant's post-arrest silence against him.
Thus, as in Kersey, defendant was not prejudiced by the reference to his post-arrest silence during the testimony of Agent Riker. Furthermore, the trial judge was within his discretion under LSA-C.Cr.P. art. 771 to give an admonishment to the jury instead of declaring a mistrial.
Defendant also challenges the comment made by the State in its opening statement referencing defendant's post-arrest silence. Specifically, the State stated, "And then when Agent Riker asked him about the rapes, the Defendant decided he didn't want to talk any more." While such a remark appears impermissible, it does not warrant reversal.
The prosecutor's reference to defendant's post-arrest silence during opening statement was brief. The record shows the State's opening statement was approximately 18 pages and only one sentence out of the 18 pages referenced defendant's post-arrest silence. There is no indication that the brief reference by the prosecutor was a deliberate attempt to inject or exploit the issue. The remark was made at the beginning of a three-day trial and there is no indication the State *215 attempted to stress or make continued references to defendant's post-arrest silence. Additionally, the evidence against defendant was overwhelming. Defendant admitted he kidnapped and robbed the victim. His DNA matched the DNA found in the semen stains located in the victim's car and his fingerprint was found on an item in the victim's car.
The record shows that the trial as a whole was conducted fairly and defendant's guilt was overwhelming. Under these circumstances, a mistrial was not warranted. While defendant was entitled to an admonishment for the prosecutor's improper remark, defendant did not request it. Nonetheless, the failure of a trial court to admonish the jury is considered harmless error when there is considerable evidence of the defendant's guilt. See, State v. Jones, 94-0926 (La.App. 4 Cir. 12/28/94), 648 So.2d 472, 480, writ denied, 95-0272 (La.6/16/95), 655 So.2d 346; State v. Stelly, 93-1090 (La.App. 1 Cir.4/8/94), 635 So.2d 725, 729, writ denied, 94-1211 (La.9/23/94), 642 So.2d 1309; State v. Smith, 336 So.2d 867, 869-870 (La.1976).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues the trial court erred in allowing the State to present evidence of other crimes, namely his prior conviction for forcible rape. Defendant acknowledges that LSA-C.E. art. 412.2 allows evidence of past sexual offenses but contends the evidence must still be relevant. Defendant asserts his past sexual offense was completely irrelevant to any issue regarding the present offense. He contends the State offered evidence of his prior conviction solely to show he was a bad person and that his past behavior made it more likely that he committed the present offense. Defendant also contends the manner in which the State presented the evidence of other crimes, through the testimony of the prior victim, was highly prejudicial and robbed him of a fair trial.
The State responds defendant's past conviction for forcible rape was very similar to the present offense and was relevant to show intent, system or plan, identity, motive and absence of mistake. The State further contends that even if the past conviction was inadmissible, the error was harmless because of the overwhelming evidence of defendant's guilt.
Prior to trial, the State filed a notice of intent to use evidence of other crimes. In its notice, the State indicated it planned to introduce evidence under LSA-C.E. art. 404(B) and LSA-C.E. art. 412.2 of a 1990 incident where defendant pled guilty to robbery, rape and attempted kidnapping of another female victim. A Prieur[2] hearing was held during which the State argued the evidence was admissible to show pattern, plan, preparation, identity, motive and absence of mistake or accident. The trial court took the matter under advisement and subsequently issued a judgment ruling the evidence of defendant's other crimes was admissible.
At trial, the State presented the testimony of C.K. At the beginning of C.K.'s testimony, defense counsel objected, arguing C.K.'s testimony was inadmissible evidence of other crimes. The trial court overruled defendant's objection.
C.K. proceeded to testify that, on the night of January 15, 1990, a man approached her while she was getting out of her vehicle at her apartment complex. The man grabbed her vagina and shoved her into the car. She resisted and a fight *216 ensued during which the man beat her in the face with his fists. The man threatened to kill her and made her get into the back seat of the car where he threw his jacket over her head. He told C.K. not to look at him or he would kill her. Once in the backseat, the man raped her. C.K. managed to escape when the man got back into the front seat of the car. The man drove off in C.K.'s car and was ultimately caught while driving her car. C.K. testified defendant was the man who raped her. She stated she never had to testify in court because defendant pled guilty.
At the conclusion of the direct examination of C.K., defense counsel moved for a mistrial on the basis of improper 404(B) evidence that only served to show defendant as a bad person. He argued C.K.'s testimony and accompanying photographs of her injuries were highly prejudicial. Noting that it had previously ruled on the issue several times, the trial court denied defendant's request for a mistrial. The trial court gave a limiting instruction to the jury at the conclusion of C.K.'s testimony. The trial court further instructed the jury that it could not find defendant guilty of the present offense simply because he committed another offense.
The State then presented the testimony of Lieutenant Don English, who investigated the rape, robbery and attempted kidnapping of C.K. in 1990. Lt. English testified that defendant gave a statement on the night of the incident wherein he admitted vaginally raping C.K. Lt. English stated defendant pled guilty. Defense counsel again moved for a mistrial based on a violation of 404(B). His request was again denied and another limiting instruction was given to the jury.
In 2001, by Act 1130, the Legislature enacted LSA-C.E. art. 412.2 which provides in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who is under the age of seventeen at the time of the offense, evidence of the accused's commission of another sexual offense may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
In State v. Williams, 02-1030 (La.10/15/02), 830 So.2d 984, 986-987, the Louisiana Supreme Court reviewed the transcript of the committee hearing of Act 1130 that enacted Article 412.2 and explained the purpose of the article as follows:
Act 1130 was prompted primarily by two decisions of this Court, State v. McArthur, 97-2918 (La.10/20/98), 719 So.2d 1037, and State v. Kennedy, XXXX-XXXX (La.4/3/01), 803 So.2d 916. Both cases involved prosecutions for aggravated rape in which the state sought to introduce evidence of other sexual offenses committed by the defendants pursuant to what the state labeled a "lustful disposition" exception to other crimes evidence. In both cases, this Court refused to recognize the so-called "lustful disposition" exception to Article 404's other crimes prohibition, but, in doing so, noted that the evidence sought to be introduced would be admissible if Louisiana had a rule similar to Federal Rule of Evidence 413. The enactment of Article 412.2 was apparently the legislature's response to this Court's statements in McArthur and Kennedy as the language of Article 412.2 closely follows that of Federal Rule of Evidence 413. However, one distinction exists between the federal rule and the Louisiana rule. Federal Rule of Evidence 413 provides that the "defendant's commission of another offense or offenses of sexual *217 assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Conversely, Louisiana's counterpart, Article 412.2 provides that the evidence "may be admissible... subject to the balancing test provided in Article 403." Although the legislature opted not to make the evidence automatically admissible, it nonetheless determined evidence of past sexual behavior of an accused should not be totally foreclosed to the state. Prior to Article 412.2, evidence pertaining to other crimes in sexual assault could only be admitted under the limited exceptions of 404(B).
(Footnotes omitted; emphasis as found in the original.) In Williams, the Supreme Court held that a Prieur hearing is not required prior to admitting evidence under LSA-C.E. art. 412.2.
Since the Louisiana Supreme Court has noted that Article 412.2 is similar to Federal Rule 413, a review of federal jurisprudence pertaining to Federal Rule 413 provides helpful insight into its application. Although the wording of the federal rule differs from the Louisiana rule, as observed by the Louisiana Supreme Court in Williams, a review of federal jurisprudence reveals the two rules are virtually identical in application. In particular, the federal courts have held that evidence introduced under Federal Rule of Evidence 413 is subject to the Federal Rule of Evidence 403 balancing test. United States v. Mound, 149 F.3d 799, 800 (8th Cir.1998), cert. denied, 525 U.S. 1089, 119 S.Ct. 842, 142 L.Ed.2d 697 (1999); United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998). Federal Rule 403 and LSA-C.E. art. 403 provide for the exclusion of relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay" or waste of time. The Federal Rule has the additional factor of "needless presentation of cumulative evidence." Thus, like Article 412.2, Federal Rule 413 evidence is not automatically admissible.
Historically, evidence of prior bad acts (or propensity evidence) has been inadmissible to prove the character of a person in order to show he acted in conformity therewith. The United States Supreme Court explained the ban as follows:
The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of the issues, unfair surprise and undue prejudice. (Footnotes omitted.)
Michelson v. United States, 335 U.S. 469, 475-476, 69 S.Ct. 213, 93 L.Ed. 168 (1948).
Over the years, exceptions have been made to this exclusionary rule. For example, evidence of prior bad acts may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. LSA-C.E. art. 404(B); United States v. Enjady, 134 F.3d 1427, 1430-1431 (10th Cir.1998), cert. denied, 525 U.S. 887, 119 S.Ct. 202, 142 L.Ed.2d 165 (1998). The federal courts have found Federal Rule 413 to be another exception to the ban on propensity evidence. Enjady, supra; United States v. *218 Tyndall, 263 F.3d 848, 850 (8th Cir.2001). The federal courts have noted that "Rule 413 is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice." United States v. Enjady, supra at 1431. The courts have concluded that "Rule 413 supersedes Rule 404(b)'s restriction and allows the government to offer evidence of a defendant's prior conduct for the purpose of demonstrating a defendant's propensity to commit the charged offense." United States v. Guardia, supra at 1329. Furthermore, the courts have noted there is no inherent error in admitting evidence under Rule 413 that would be inadmissible under Rule 404(b). United States v. Mound, supra at 802.
In discussing the effect Federal Rule 403 has on Rule 413, the federal courts have stated that propensity evidence is relevant. United States v. Guardia, supra at 1328. The courts caution that, in applying the 403 balancing test, careful attention must be given to "both the significant probative value and the strong prejudicial qualities inherent in all evidence submitted under 413." Id. at 1330. The United States Tenth Circuit observed that "[i]f Rule 413 evidence were always too prejudicial under 403, Rule 413 would never lead to the introduction of evidence." Id. The federal courts have recognized "the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible" and have read Rule 413 to create somewhat of a presumption that the evidence is admissible. United States v. LeCompte, 131 F.3d 767, 769 (8th Cir.1997); United States v. Enjady, supra at 1431.
In United States v. Enjady, supra, defendant was convicted of aggravated sexual abuse. During trial, the State introduced evidence under Federal Rule 413 of a prior rape defendant allegedly committed through the testimony of the alleged victim. The defendant appealed claiming prejudicial error in the admission of the evidence of the prior rape. The United States Tenth Circuit found the trial court properly ruled the evidence admissible under Rule 413 and properly considered Rule 403 in balancing the probative value of the evidence against prejudice to the defendant. The court noted "the exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence `normally' should be admitted." United States v. Enjady, 134 F.3d at 1432.
In discussing "unfair prejudice" as contemplated by Rule 403, the United States Eighth Circuit stated, "Rule 403 is concerned only with `unfair prejudice, that is, an undue tendency to suggest decision on an improper basis.'" United States v. Gabe, 237 F.3d 954, 959 (8th Cir.2001), quoting United States v. Yellow, 18 F.3d 1438, 1442 (8th Cir.1994). The court noted that evidence under Federal Rule 414[3] is prejudicial for the same reason it is probative, it shows the defendant's propensity to molest young children. The court concluded that "because propensity evidence is admissible under Rule 414, this is not unfair prejudice." Id. at 960.
Under LSA-C.E. Article 412.2, evidence of a prior sexual offense is admissible if relevant and if its probative value outweighs its prejudicial value. Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. State v. Bridgewater, 98-658 (La.App. 5 Cir.12/16/98), 726 So.2d 987, 993.
In the instant case, evidence of the prior rape is highly relevant to show *219 defendant's propensity to sexually assault women as they tend to matters near their vehicles and to attempt to kidnap the women and drive away in their vehicles. For the same reason it is probative, the evidence of the prior rape is prejudicial to defendant.
Like Congress, the Louisiana Legislature saw a need to lower the obstacles to admitting propensity evidence in sexual assault cases. Considering the purpose behind Article 412.2, the evidence is not so prejudicial as to warrant exclusion. There is no indication evidence of the prior rape confused or misled the jury. The evidence was presented in an orderly manner with evidence of the prior rape being presented at the end of the trial, clearly and succinctly through two witnesses. Thus, there was little chance the jury could confuse the facts of the two crimes. Additionally, the fact that approximately twelve years passed between the prior rape and the current rape, does not mandate the exclusion of the evidence. The Legislature, like Congress, did not see fit to impose any time limit on the admission of prior sex offenses. See, United States v. Gabe, supra at 960.
Accordingly, the trial judge did not err in admitting other crime evidence. This assignment of error is without merit.
As requested by defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990).
First, although defendant was charged as a third felony offender, the trial judge failed to specify that it found defendant to be a third felony offender. Rather, the trial judge stated, "the Court concludes that the State has met its burden of establishing that the Defendant is a Multiple Offender pursuant to La. R.S. 15:529.1 and should be sentenced accordingly." Since the trial judge failed to specify that defendant was a third felony offender, the sentence is defective because it is not determinate. State v. Jones, 516 So.2d 396, 402 (La.App. 5 Cir.1987). Therefore, we vacate the sentence on the multiple offender finding and remand the case for a determination of the number of felonies proven by the State and for re-sentencing following that determination.
Second, there is no indication in the record that the trial court gave defendant notice of the registration requirements for sex offenders as required by LSA-R.S. 15:543(A). LSA-R.S. 15:542 requires that all persons convicted of a sex offense must register with the sheriff of the parish where the person resides. LSA-R.S. 15:543(A) requires the trial court to provide written notification of the registration requirements to the defendant upon judgment and sentencing. This Court has recognized the failure of the trial court to give said notice as an error patent. State v. Stevenson, 00-1296 (La. App. 5 Cir.1/30/01), 778 So.2d 1165, 1166-1167. Additionally, the record does not reflect defendant was advised when he was originally sentenced, or when he was sentenced as a multiple offender, of the two-year prescriptive period for post-conviction relief as required by LSA-C.Cr.P. art. 930.8. Accordingly, we order the trial judge to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 and the registration requirements of LSA-R.S. 15:542 following re-sentencing on the multiple offender finding.
CONVICTIONS AND SENTENCES AFFIRMED, SENTENCE ON MULTIPLE BILL VACATED, MATTER REMANDED FOR RESENTENCING.
NOTES
[1] The victim's initials are used under the authority of LSA-R.S. 46:1844(W)(3) which allows the Court to identify a victim of a sex offense by using his or her initials.
[2] State v. Prieur, 277 So.2d 126 (La.1973).
[3] Federal Rule 414 relates to the admissibility of propensity evidence in child molestation cases whereas Rule 413 relates to propensity evidence in sexual assault cases.