JAMES F. McKAY III, Judge,
h STATEMENT OF THE CASE
On July 3, 2007, the defendant was charged with attempted second-degree murder (count two), armed robbery with a firearm (count one) and being a felon in possession of a firearm (count three), in violation of La. R.S. 14(27)30.1, La. R.S. 14:64.3, and La. R.S. 14:95.1, respectively. On July 16, 2007, he entered pleas of not guilty. On August 7, 2007, counsel for the defendant filed motions to suppress the evidence and the identification and to sever all counts. On February 13, 2008, the district court denied the motion to suppress the identification and found probable cause to hold the defendant for trial. On April 9, 2008, the district court granted the defense motion to sever. On May 28, 2008, the state tried the defendant on the attempted murder count and, the defendant was convicted of the responsive verdict of aggravated battery in violation of La. R.S. 14:34. On June 25, 2008, the defendant was sentenced to serve ten years at hard labor with credit for time served. The state filed a multiple bill of information. The defense filed a motion for appeal and a motion for reconsideration of sentence. The defense filed a motion to reconsider the sentence.
STATEMENT OF THE FACTS
^Detective Ryan Aucoin testified that he was assigned to investigate the April 26, 2007 shooting of Jabbar LoCure. He spoke to Officer Shannon Jones, who wrote the initial police report, and Detective Brian Gillis regarding the facts surrounding the shooting. After obtaining a copy of the initial police report Detective Aucoin attempted to meet with the victim at University Hospital; he was not successful. He then drove to the scene of the shooting located at 3167 Preston Place. He was not successful in finding any witnesses or a gun at the scene. The following day he spoke to the victim’s father, William Lo-Cure, at LoCure’s home. He was able to develop a suspect named “Duggum”. Subsequently, on April 30, 2007 he visited the victim, Jabbar LoCure, at University Hospital. The victim was awake and alert but was not able to speak because his jaw was wired shut. He testified that he showed Jabbar a six-picture photographic lineup. He asked Jabbar if he could identify who shot him; Jabbar answered that he could. Using hand signals Jabbar indicated that a vehicle and at least three people may have been involved in the incident. When shown the photographic lineup Jabbar nodded to the defendant’s picture which was in the number one position. In addition, Jabbar wrote the defendant’s name *276 on a piece of paper identifying him as the shooter. An arrest warrant was prepared, and the defendant was subsequently arrested; no gun was recovered from the defendant. Detective Aucoin testified that the defendant did not make any statements to him and, to his knowledge, did not make any statement to any other law enforcement officer. The defense moved for a mistrial; the motion was denied.
On cross-examination, Detective Ryan stated that Jabbar never described the height or weight of the person who shot him. He testified that the only facts he | ¡¡knew regarding the shooting were those he read in the initial police report and those relayed to him by the victim.
Erin Cunningham, Police Technical Specialist at the New Orleans Crime Lab, testified that she was summoned on April 26, 2007 to photograph the crime scene at 3167 Preston Place. She identified state’s exhibit One A as the photograph of a spent bullet casing that she photographed at the crime scene.
On cross-examination she testified that she had no independent knowledge of how the casing may have come to be at the crime scene.
Jabbar LoCure testified that in the early morning hours of April 26, 2007, while taking home a female friend in the three thousand block of Preston Place, he was shot in the left side of his face and left arm by the defendant, James Allen. He stated that the defendant’s street name is “Dug-gum”. He testified that he knew the defendant from the neighborhood and that the defendant had taken his goddaughter to the prom. He stated that he and his female friend had gone to a club that night. He denied drinking alcohol that night but, he admitted that he took Perco-cet for pain from injuries that he sustained in an automobile accident. He denied having used cocaine that night. He admitted that he was married but insisted that his female friend was not his girlfriend. He stated that he stopped in front of his friend’s house; she exited his Blazer to go inside, and he walked around the back of the Blazer. He observed the defendant on the curb. Another car, a BMW, was also parked in front of the Blazer. As he stood behind the BMW, the defendant asked for “Z”, his friend’s brother. The friend told him that “Z” was not there. As Jabbar turned to walk to towards his friend’s front door, he heard footsteps behind him. As he turned, the defendant held a gun to his face and shot him. Jabbar wiped his face and stated to the defendant, “You shot me?” The defendant 14answered, “No you shot me.” The defendant tried again to put the gun in Jabbar’s face. Jabbar lifted his arm to block the gun, and the defendant shot him in the arm. Jabbar spun around and fell to the ground; the defendant walked away towards a silver car. Jabbar could see that there were several other subjects in the silver car. Jabbar denied shooting the defendant and denied having a gun or any other weapon.
Jabbar testified that the defendant did not leave immediately. Jabbar got up and went inside his friend’s house. As he turned and looked out of the doorway, he saw the defendant drive off. Shortly thereafter his brother arrived on the scene, calmed him down and called his father. His father arrived and drove him to Meadowcrest Hospital on Belle Chasse Highway. On the way to the hospital Jab-bar told his father that “Duggum” shot him. He testified that he was not able to remember the defendant’s real name. From Meadowcrest Hospital he was transported to University hospital where he underwent eleven hours of facial surgery and a tracheotomy to help him breathe. Jabbar testified that a couple of days after the surgery he was visited by Detective *277 Aucoin. He stated that he was not able to speak but communicated through his wife and by writing information on a piece of paper. He stated that he was shown a photographic lineup and identified the defendant as the person who shot him. On a piece of paper he wrote, “My name is Jabbar LoCure, and I am telling Detective Ryan Aucoin that Duggum shot me twice. Once in the face and once in the arm. And, he is in position one.” He admitted to having a conviction for armed robbery in 1992.
On cross-examination, Jabbar admitted that he used cocaine on his birthday, April 17, 2007. He stated that the defendant’s street name is “Duggum” and that is how he knew him. He stated that he wrote the paper identifying defendant on the |ssame day that he was shown the photographic lineup and identified thee defendant’s picture. He admitted that his female friend, Shanell Reed, was, in fact, his girlfriend as he had previously testified at the motion to suppress hearing conducted on February 13, 2008. He also admitted that prior to the shooting another individual known as “Whiteboy” rode a bicycle to the scene. He denied that the defendant said, “Why did you shoot at me?” He stated that he stayed on the ground after he was shot until the defendant walked away. He admitted that his prior conviction was for two counts of armed robbery that occurred between Orleans and Jefferson Parishes.
On re-direct examination Jabbar testified that Shanell Reed is no longer his girlfriend.
William LoCure testified that he is the father of the victim, Jabbar LoCure. He stated that he drove to the scene of the shooting and transported his son to the hospital. He testified that Jabbar was bleeding from his mouth and shoulder. He was scared that Jabbar would die and wanted to know who shot him. Jabbar told him it was “Duggum” who shot him.
ERRORS PATENT
A review for errors patent reveals none.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
By his sole assignment of error, the defendant asserts that the trial court erred in denying his motion for a mistrial. Specifically, he argues that the prosecutor’s question to Detective Aucoin regarding the defendant’s failure to make any statement at the time of his arrest had no legitimate basis but to solely ascribe guilt. The testimony at issue follows:
lfiBY MR. SHUTE:
Q. Was Mr. Allen arrested pursuant to that warrant?
A. He was arrested, yes.
Q. Okay. To your knowledge as the lead detective in this case, was a gun recovered from Mr. Allen?
A. No gun was recovered in this case.
Q. Did Mr. Allen make a statement to law enforcement about what happened that day?
BY MR. HURTT:
Objection, Your Honor.
BY THE COURT:
I am going to permit that.
BY MR. SHUTE:
Q. Did he ever make a statement to you or to any other member of law enforcement?
A. He has never made a statement to me or to any other law enforcement to my knowledge.
BY MR. HURTT:
Your Honor, at this time I would ask for a mistrial.
BY THE COURT:
Denied
BY MR. SHUTE:
*278 I have no further questions.
BY THE COURT:
Tender to the Defense.
|7La.C.Cr.P. art. 775 provides that the trial court shall grant a mistrial when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial. “Mistrial is an extreme remedy and, except for instances in which the mandatory mistrial provisions of La.C.Cr.P. art. 770 are applicable, should only be used when substantial prejudice to the defendant is shown.” State v. Castleberry, 98-1388, p. 22-(La.4/13/99), 758 So.2d 749, 768. “The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.” State v. Wessinger, 98-1234, p. 24 (La.5/28/99), 736 So.2d 162, 183.
In State v. Smith, 336 So.2d 867 (La.1976), the Louisiana Supreme Court pointed out that Article 770 does not apply to references to a defendant’s post-arrest silence by the prosecutor or by witnesses, but only applies to references to the defendant’s failure to testify at trial. Rather, La.C.Cr.P. art. 771[1] is the applicable provision concerning the proper remedy where references are made to a defendant’s post-arrest silence. Pursuant to La. C.Cr.P. art. 771, the trial court has the discretion [Rto grant a mistrial or simply admonish the jury, upon the request of the defendant, where the prosecutor or a witness makes a reference to a defendant’s post-arrest silence. A brief reference to a defendant’s post-arrest silence does not mandate a mistrial or reversal when the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes. State v. Ledesma, 01-1314 (La.App. 5 Cir. 4/30/02), 817 So.2d 390.
In Smith, the defendant’s motion for mistrial was based upon a comment made by the prosecuting attorney during the direct examination of the arresting officer in an attempt to summarize the officer’s testimony. The prosecutor stated that the defendant had refused to give a statement when he was under custodial arrest. The Supreme Court found that the reference by the prosecutor was incidental and inadvertent and there was no indication of the deliberate intent of the State to inject or exploit the issue, and it held that the trial court did not abuse its discretion in denying the motion for mistrial.
In State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, the defendant challenged the comment made by the State in its opening statement referencing defen *279 dant’s post-arrest silence. The prosecutor commented in the opening statement, “And then when Agent Riker asked him about the rapes, the Defendant decided he didn’t want to talk any more.” The Fifth Circuit found that the comment did not warrant reversal of the defendant’s conviction.
In the instant case, the prosecutor’s question to Detective Aucoin, which elicited the reference to the defendant’s post-arrest silence, does not appear to be for the purpose of calling the jury’s attention to it or having the jury make an 1 ^inappropriate inference. See, State v. Kersey, 406 So.2d 555, 560 (La.1981). In fact, defense counsel objected to the comment without stating the nature of the objection or requesting an admonition. Hence, the jury’s attention was not diverted to the issue of the defendant’s post-arrest silence. There is no indication that the State deliberately intended to exploit the defendant’s post-arrest silence. The state made no further mention of the defendant’s post-arrest silence during the testimony of other state witnesses or in closing argument. Clearly, the trial as a whole was conducted fairly. The defendant was known to the victim by his street name, “Duggum.” The victim positively identified the defendant at trial and in a six-person photographic line up. Furthermore, the defendant never articulated any substantial prejudice he sustained by Detective Aucoin’s answer. In fact, the jury convicted him of the lesser included offense of aggravated battery. Further, assuming that the trial court committed error in failing to admonish the jury, such error was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The inquiry is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. McQuarter, 2000-1553 (La.App. 4 Cir. 6/6/01), 788 So.2d 1266. The trial court did not abuse its discretion in denying the request for a mistrial. Under these circumstances, a mistrial was not warranted. This assignment is without merit.
CONCLUSION
Accordingly, for the above and foregoing reasons we affirm the defendant’s conviction and sentence.
AFFIRMED.

. C.Cr.P. art. 771 provides:
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person, other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.