FREDERICKA HOMBERG WICKER, Judge.
12Pefendant, Troy Greenup, appeals his conviction for aggravated rape upon a victim under the age of thirteen in violation of La. R.S. 14:42. Defendant argues the trial court erred in admitting evidence of a prior sexual battery of another boy, claiming that evidence was overwhelmingly prejudicial. Defendant also argues the trial court erred in denying defendant’s motion for new trial, asserting that the state’s improper rebuttal argument prejudiced the jury and affected the verdict. For the following reasons, we find these assignments of error to be without merit and affirm defendant’s conviction. However, we remand this matter to the trial court for notification to the defendant of his sex offender registration requirements pursuant to La. R.S. 15:540 et seq.

STATEMENT OF THE CASE

On June 9, 2011, a Jefferson Parish Grand Jury returned an indictment charging defendant with aggravated rape upon a victim under the age of thirteen in violation of La. R.S. 14:42.1. On June 10, 2011, defendant was arraigned and ^entered a plea of not guilty to the charge. The matter proceeded to trial by jury, where on June 14, 2012, a 12-person jury returned a verdict of guilty as charged.
Defendant filed motions for post-verdict judgment of acquittal and new trial, which the trial court denied on July 20, 2012. That day, after defendant waived sentencing delays, the trial court sentenced defendant to mandatory life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This timely appeal follows.

FACTS

The case arises out of D.B.’s allegations against his father, the defendant in this matter.[1] D.B. alleges that when he was between the ages of three and five years old, on multiple occasions, defendant used his penis to penetrate D.B.’s mouth and “butt.” D.B. alleges these acts started when he was living with his parents in Westwego in an apartment on Tanglewood Street and continued after they moved to a residence on Avenue D. D.B. was born in 1997 and later testimony by D.B.’s mother corroborated the fact that they all lived together from May 2000 until sometime in 2003 or 2004, when D.B.’s mother and D.B. moved in with D.B.’s maternal grandparents.[2] D.B. alleges his father ceased these acts when he and his mother moved out. D.B. did not report these acts at the time they occurred.
Several years later, in mid-2010, D.B.’s mother received a phone call from a person asking her to testify for defendant in an unrelated matter. D.B.’s mother did *771 not immediately agree; she testified that she prayed on the matter and after a Rcouple of months, in September 2010, asked her son whether his father had ever hurt him:
I just asked him. I just told him he wasn’t in trouble, and I needed to know — needed him to be honest and let me know if his daddy’s ever touched him wrong.... He said “Yes.”
D.B.’s mother continued to ask him questions about what specific acts his father committed. D.B.’s mother testified that D.B. told her that these acts occurred when she went to work.
D.B.’s mother did not call the police, rather, she sought counseling for D.B. from a clinic in Marrero. That clinic then reported D.B.’s allegations to the Office of Community Services (“OCS”). In response, OCS (now the Department of Children and Family Services) investigated the matter.
Ms. Kay Evans, an OCS investigator, interviewed D.B., his mother, and his father. Ms. Evans testified that D.B.’s allegations were consistent and that she recommended that D.B. stay with his mother because D.B.’s father no longer had access to him. Ms. Evans also interviewed each of D.B.’s siblings, who all denied having been abused by the defendant. Ms. Evans also testified that she prepared a report indicating that D.B.’s father denied the allegations of abuse and further denied ever living with D.B. during the relevant time period.
After its investigation, OCS notified the police and D.B. was brought to the Audrey Hepburn Care Center and the Children’s Advocacy Center (“CAC”) for further investigation.
On October 16, 2010, at the Audrey Hepburn Care Center, Anne Troy, a forensic nurse practitioner, interviewed and examined D.B. D.B. told Ms. Troy that while his mother was away at work, defendant forced him to put his mouth on defendant’s penis and defendant inserted his penis into D.B.’s anus. Ms. Troy then physically examined D.B. Although that examination revealed no physical 1 r,evidence of sexual abuse, Ms. Troy testified that such findings are not unusual because the alleged abuse had occurred many years prior.
On January 18, 2011, Staci Lanza of the CAC interviewed D.B. In that interview, D.B. alleged that when he was three or four years old, on multiple occasions, defendant removed D.B.’s clothes and inserted his penis into D.B.’s mouth and “butt.” In that recorded interview, D.B. stated that, during the first instance of abuse, his father had laid behind him on a bed in the living room, with both of them naked, and inserted his penis into D.B.’s “butt.” D.B. also alleged that on a different occasion, defendant forced D.B. to put his mouth on defendant’s penis. D.B. alleged that this type of abuse also happened after he moved to a new residence with his mother and father. D.B. alleged that in his new residence, his father penetrated him orally and anally with his penis.
On November 14, 2011, the state filed a “Notice of Intent to Use Evidence of Other Crimes.” The state sought to introduce evidence of defendant’s past sexual battery of another boy, L.T., under La. C.E. 404(B) to prove opportunity, intent, and modus operandi, and under La. C.E. 412.2 to prove a lustful disposition toward children. After a hearing on the matter, the trial court ruled that the state would be permitted to introduce such evidence at trial. Defendant’s counsel objected to this ruling.
The matter proceeded to trial. At trial, the state introduced evidence of defendant’s past sexual battery of another young boy, L.T. The state called L.T.’s *772 mother, and then L.T. Before either testified however, the trial judge read a limiting instruction to the jury, informing the jury that they could only consider such testimony for the purposes of finding defendant had “a system, intent, and/or lustful disposition towards children.” Once on the stand, L.T.’s mother testified that she was introduced to defendant through her boyfriend’s cousin and for about 16a year in 2009 or 2010 defendant came to her house “nearly every day” in the afternoon. She testified that, during that time, L.T. was five years old. L.T.’s mother testified that L.T. and defendant were alone only when she and the other adults were outside smoking cigarettes, a time period typically of five to ten minutes. L.T. then took the stand and testified that defendant touched his “private area,” what L.T. identified as his “pee-pee,” while both he and defendant were clothed. L.T. also testified that he touched the defendant’s “private area.” He testified that this occurred at his house when he and defendant were alone while the others were outside. L.T. testified this happened one night while he was watching a movie and that he thereafter told his mother about the occurrence. L.T.’s recorded interview from the CAC was published to the jury.
The defense called only one witness, Bonnie Henderson. Ms. Henderson testified that defendant had never lived with D.B. and his mother. She testified that from 2000 until 2005, defendant resided with Ms. Henderson’s sick mother and acted as her full-time caregiver.
At the conclusion of trial, the jury returned a verdict finding defendant guilty as charged of aggravated rape.

DISCUSSION

On appeal, defendant argues the trial court erred both in admitting the evidence relating to defendant’s past sexual battery of L.T. and in failing to grant his motion for new trial based on the state’s prejudicial rebuttal argument to the jury. We address each assignment in turn.

First Assignment

Defendant argues the trial court erred in permitting the state to introduce evidence relating to defendant’s alleged sexual battery of L.T. under La. C.E. |7404(B) in order to prove opportunity, intent, and modus operandi, and under La. C.E. 412.2 to prove defendant had a lustful disposition toward children.
In its pre-trial “Notice of Intent to Use Evidence of Other Crimes,” the state sought to introduce evidence of defendant’s prior arrest for the sexual battery of L.T., asserting that the evidence was admissible to prove modus operandi, opportunity, and intent pursuant to La. C.E. art. 404(B), as well as defendant’s lustful disposition toward children pursuant to La. C.E. art. 412.2. After a hearing, the trial court ruled the evidence admissible pursuant to La. C.E. arts. 404(B) and 412.2. The defense objected to the court’s ruling.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past. State v. Williams, 09-48, p. 9 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 363, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860 (citation omitted). However, such evidence may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule when it tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character. State v. Dauzart, 02-1187, p. 8 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165.
*773 For instance, the Louisiana Supreme Court first recognized a “lustful disposition” exception in State v. Cupit, 189 La. 509, 179 So. 837 (1938). In Cupit, the defendant was charged with assault with intent to commit rape of his niece. The state presented evidence that the defendant had raped another niece and that the defendant had been charged with the rape of a third niece. The Supreme Court held the evidence was admissible because the “prior offenses ... clearly tended to show the lustful disposition the defendant bore towards his nieces, and his | sunnatural desire to have sexual intercourse with them; all of his nieces being children of tender age.” Cupit, 179 So. at 839.
In 2001, the Louisiana legislature codified this lustful disposition exception in La. C.E. art. 412.2 which governs the admission of evidence of similar crimes, wrongs, or acts in sex offense cases and, in pertinent part, provides:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
Accordingly, pursuant to La. C.E. art. 412.2, evidence of a prior sexual offense is admissible to show a defendant’s lustful disposition towards children if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. State v. Olivieri, 03-563, p. 19 (La. App. 5 Cir. 10/28/03), 860 So.2d 207, 218; See also La. C.E. art. 403. In conducting the balancing test under La. C.E. art. 403, the trial court should consider whether the probative evidence of prior acts will serve to “lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.” Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).
For instance, in Olivieri, supra, this Court held that evidence of the defendant’s prior conviction for forcible rape was admissible under La. C.E. art. 412.2 in the defendant’s aggravated rape prosecution. There, the defendant forced the victim, an adult woman, into her car, drove her to a remote location, and raped her in the backseat of her car. Id. at 209-10. The victim of the prior offense, who was also an adult woman, testified that the defendant forced her into her car and leaped her in the backseat. Id. at 215-16. The Olivieri court concluded that the prior conviction was relevant to show the defendant’s propensity to sexually assault women who tended to matters near their vehicles and to show the defendant’s attempt to kidnap women and drive off in their vehicles. Id. at 218-19.
Although the Olivieri court observed that the evidence was prejudicial for the same reason that it was probative, the court concluded that it was not so prejudicial as to warrant its exclusion, pointing out that the evidence was presented in an orderly manner and there was no indication the other crimes evidence misled or confused the jury. Olivieri, 03-563, 860 So.2d at 219.
In State v. Williams, 11-876, pp. 8-9 (La.App. 5 Cir. 3/27/12), 91 So.3d 437, 441, writ denied, 12-1013 (La.9/21/12), 98 So.3d 334, this Court found the defendant’s prior conviction of carnal knowledge of a 13-year-old girl to be highly relevant to his *774 charged offense of molestation of a 9-year-old girl. This Court found the evidence admissible under 412.2 to show the defendant’s lustful disposition towards young children. Although the charged offense in Williams involved touching and the prior conviction involved intercourse, this Court found that there is no requirement that the prior act be identical in nature to the charged offense. Id. In reaching its conclusion, this Court reasoned:
There was no indication that the other crimes evidence confused or misled the jury. The evidence was presented in an orderly manner, and the trial judge gave a limiting instruction regarding the prior conviction when the State presented the certified copy of defendant’s prior conviction and prior to jury deliberations. The trial court also clearly instructed the jurors that they were not to find guilt in this case based on the other sexual offense.

Id.

The admissibility of other crimes or bad acts under La. C.E. art. 412.2 however is not unlimited. In State v. Parker, 42,311, pp. 14-15 (La.App. 2 Cir. 8/15/07), 963 So.2d 497, 505-507, the Second Circuit held that in a defendant’s prosecution for indecent behavior with three juvenile females, the trial court abused its discretion in admitting evidence of prior uncharged misconduct with three adult women.[3]
In this case, we find that defendant’s alleged sexual abuse of L.T. was highly relevant to show that he had a lustful disposition toward young boys with whom he had regular contact. The record reflects that both L.T. and D.B. were boys at or around the age of 5 years when their abuse occurred. The evidence further shows that defendant lived with D.B. and that he came to L.T.’s residence almost every afternoon. Although the charged offense involved anal and oral sexual intercourse with D.B. and the prior act involved the mutual touching of genitals, there is no requirement that the prior act be identical in nature to the charged offense. Williams, supra. Although the evidence of defendant’s prior sexual abuse of L.T. is inherently prejudicial, we find its probative value to show defendant’s lustful disposition toward children substantially outweighed its prejudicial nature. See Olivieri, supra. Further, we find that any prejudice created by the evidence was minimized by the trial court’s instruction to the jury and by the orderly nature of the presentation of the evidence relating to D.B. and L.T. Immediately prior to the testimony of L.T. and his mother, the court instructed the jury as follows regarding evidence of other crimes:
Evidence that the defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show intent, system, and/or to show a lustful disposition towards children. Remember. The accused is on trial only for the offense charged.
InThe evidence at trial was presented in an orderly and clear manner: the state presented the testimony regarding defendant’s abuse of D.B. before the evidence regarding L.T.’s abuse. Additionally, the jury was not likely to be confused between the two different crimes as both L.T. and D.B. testified. At the time of their trial testimony, L.T. was eight years old and D.B. was fourteen years old. Further *775 more, the record reflects that the testimony presented regarding L.T.’s abuse did not overwhelm or detract from the evidence presented for the charged offense. See State v. Hernandez, 11-712, pp. 24-27 (La.App. 5 Cir. 4/10/12), 93 So.3d 615, 629-630 (Wicker, J., Concurring), writ denied, 12-1142 (La.9/28/12), 98 So.3d 834.
For these reasons, we find the trial court did not abuse its discretion in admitting this evidence under La. C.E. art. 412.2. Because we find that the evidence relating to L.T. was admissible to prove defendant’s lustful disposition toward children under La. C.E. art. 412.2, we need not address defendant’s other arguments that this evidence was also improperly admitted under La. C.E. 404(B) to prove intent or system.[4] Therefore, defendant’s first assignment of error is without merit. Second Assignment
In his second assignment of error, defendant argues that the trial court erred in denying his motion for new trial on the grounds that his counsel’s objection to the state’s use of prejudicial and inflammatory language during its rebuttal argument should have been sustained. The state responds that its rebuttal argument was simply an inarticulate response to the defense’s argument that defendant had a | ^motive to fabricate his allegations against defendant to extricate himself from the problems he faced in school at that time.
Here, during the state’s rebuttal argument, the prosecutor argued:
How do you think it’s going to be at [school] next year when the boys learn, and they will learn, that [D.B.] was anally penetrated by his father and made to suck his penis? Do you think that the boys will just say “That’s okay. We still love you. Try out for the football team next week.” Or will it be more along the lines of “There goes that faggot, [D.B.].”
In addressing this assignment, we recognize that a prosecutor has considerable latitude in making closing arguments. State v. Pierce, 11-320, p. 15 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1277. However, this latitude is not without limits. Id., 11-320 at 16, 80 So.3d at 1277. La.C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.
A prosecutor should refrain from argument that tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury’s verdict. State v. Messer, 408 So.2d 1354, 1356 (La.1982). The trial judge has broad discretion in controlling the scope of closing arguments. State v. Robertson, 08-297, p. 13 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 660, writ denied, 08-2962 (La.10/9/09), 18 So.3d 1279. A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed *776 to the verdict. Pierce, 11-320 at 16, 80 So.3d at 1277.
Here, defense counsel objected to the state’s rebuttal argument on the grounds that the state had exceeded the scope of its rebuttal. The state responds, | ^however, that the rebuttal argument, although inarticulate, addressed the defense counsel’s argument that D.B. had fabricated the allegations against defendant. In his closing, defense counsel argued:
Not until [D.B.] reaches his adolescence in the 7th [grade] and he’s having trouble in school and he’s in danger of failing and he’s got anger issues. He’s threatening to kill a teacher, and he’s being suspended, and he’s fighting with his brothers and sisters at home. That’s when the allegations of abuse started. That’s when they start. You can draw your own conclusions from that, but I think it’s pretty clear.
[[Image here]]
Can you convict a man and send him to prison for the rest of his life when you have unsubstantiated allegations, the facts of which transform and change across time and depending on the situation, details are different, where a young man who’s in a very difficult point in his life, who’s full of anger, is disappointed, he had difficulties — you can’t send someone to prison for the rest of their life just on allegations alone. And that’s all we’ve got in this case.
We find that defense counsel’s closing statement did call into question whether D.B. fabricated his allegations in response to problems he faced in school at the time he made the allegations. In consideration of this, we find that the state was permitted to respond to the defense’s fabrication theory. Here, the prosecution’s hypothetical described what possible future situation D.B. would have to consider had he fabricated his allegations and this was properly within the scope of rebuttal.
While we find that the state’s use of this hypothetical, and the derogatory use of the word “faggot” distasteful, we find the state did not intend to appeal to a juror’s potential prejudice against homosexuals. Therefore, we find that the trial judge properly overruled defense counsel’s objection and did not err in denying defendant’s motion for new trial on that basis. Therefore, defendant’s second assignment of error is without merit.

ERRORS PATENT

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). On review, we find one patent error requiring this case be remanded to the trial court.
The record does not reflect that defendant was notified of Louisiana’s sex offender registration requirements in accordance with La. R.S. 15:540, et seq. At the time of the offense, defendant’s conviction was defined as a “sex offense.” See La. R.S. 15:542(E)(2001); La. R.S. 15:541(14.1) (2002-2004).[5] La. R.S. 15:540, et seq., mandates registration and notification of sex offenders and La. R.S. 15:543(A) requires the trial judge to provide written notification of the registration and notification requirements. This Court has found that the failure to provide this notification, even where a life sentence has been im *777 posed, is a patent error warranting remand for written notification. See State v. Williams, 09-48, pp. 18-19, 28 So.3d at 368-69. Therefore, we remand this matter to the trial court for compliance with La. R.S. 15:540, et seq.

CONCLUSION

For the forgoing reasons, defendant’s conviction and sentence are affirmed. This matter is remanded to the trial court with instructions. The court is to inform defendant with appropriate written notice of his sex offender notification and registration requirements, by using the form contained in La. R.S. 15:543.1, within 10 days of this opinion, and to file written proof in the record that defendant received such notice. State v. Starr, 08-341 (La.App. 5 Cir. 11/25/08), 2 So.3d 451, 460-461, writ denied, 08-2991(La.9/18/09), 17 So.3d 384.

AFFIRMED AND REMANDED.

. To protect the privacy of the victim, we use initials to identify the victim, the child witnesses, and the victim's family members, pursuant to La. R.S. 46: 1844(W)(3). State v. Greene, 06-667, p. 3 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1229, writ denied, 07-0546 (La.10/26/07), 966 So.2d 571.

. B.H., a defense witness, disputed the allegation that defendant lived with D.B. and his mother in the early 2000s. B.H. testified that defendant lived with her sick mother from 2000 to 2005 when her mother died. B.H. testified that defendant never lived with D.B. or his mother.

. The Second Circuit in Parker held however that this error was harmless and did not warrant the reversal of the defendant’s conviction. Parker, supra at 14-14, 507.

. Although the trial court had ruled that the evidence relating to L.T. would be admissible to prove "opportunity” at the end of its pretrial Prieivr hearing, in its instruction to the jury, the trial court only allowed the jury to consider this evidence for intent, system or lustful disposition.

. It is well-settled that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407, p. 4 (La.6/21/02), 820 So.2d 518, 520. La. R.S. 15:541(24)(a) is the current designation of the provision that defines "sex offense” for purposes of sex offender registration.