FREDERICKA HOMBERG WICKER, Judge.
lain this criminal proceeding, defendant/appellant, Terry Harris, appeals his forcible rape conviction (La.R.S. 14:42.1) and his second-felony-offender, enhanced 76-year-hard-labor sentence. Mr. Harris assigns counseled errors arguing the trial judge erred in failing to quash the indictment because of the untimely commencement of trial; by allowing other crimes evidence that resulted in an acquittal; and, by failing to instruct the jury on the meaning of such an acquittal. He assigns the following pro se errors: insufficiency of the evidence to convict, and violation of his due process and confrontation rights at the Prieur[1] hearing. For the reasons that follow, we affirm the conviction, vacate the sentence, and remand for resentencing.
Procedural History
Mr. Harris was indicted on September 9, 2004 with the aggravated rape of a juvenile male, M.B.,[2] D.O.B. 8/21/95, a violation of La.R.S. 14:42. These incidents allegedly occurred between March 1st and May 10th, 2004.
On January 6, 2005, Mr. Harris filed various omnibus motions including motions to suppress confession, identification, and physical evidence, for a bill of | .¡particulars, for discovery, and for a preliminary examination. After that, the trial judge invoked a sanity hearing as requested by Mr. Harris and found Mr. Harris competent to stand trial. The following day, November 9, 2007, the trial court held a hearing and *272 denied Mr. Harris’ motion to suppress the statement.[3]
Two years later, on September 2, 2009, the trial court conducted a Prieur hearing regarding the state’s notice of intent to use evidence of similar crimes in sex offense cases involving minors, under La.C.E. art. 412.2, or in the alternative, pursuant to La.C.E. 404(B). The trial court later issued a written judgment finding the evidence admissible. Shortly thereafter, on September 14, 2009, Mr. Harris filed a motion to quash the indictment for failure to commence trial timely.
On October 2, 2009, the trial court heard and denied the motion to quash. A few months later, a 12-person jury returned the responsive and lesser verdict of forcible rape.
Mr. Harris filed new trial and arrest of judgment motions, which were denied. Thereafter, the trial judge sentenced Mr. Harris to 38 years at hard labor, but later vacated that sentence and imposed an enhanced second felony offender sentence after conducting a hearing. The trial judge imposed a 76 year hard labor sentence. At the original sentencing, the trial judge correctly advised Mr. Harris in writing of the sex offender and child predator registration requirements.[4] When imposing the enhanced sentence, the trial judge informed Mr. Harris that these notices of the sex offender and child predator registration requirements remained in effect. This timely appeal followed.
|fiFacts

Instant Offense

The victim’s aunt, M.J., testified that she began dating Mr. Harris in 2002. At that time, Mr. Harris was about 21 or 22 years of age. Mr. Harris began living with her and her family in 2003 at 1804 Dogwood Drive in Harvey. M.J. and her brother, A.J., testified that in addition to the aunt, the household consisted of M.J.’s parents, M.J.’s brother, the brother’s two children and his stepson, the victim.
According to M.J., Mr. Harris slept in the aunt’s rear-room bedroom with her while the victim and his siblings, along with A.J., slept in a bedroom that was connected to the aunt’s room by a bathroom. There was an outside entrance in M.J.’s room that was left unlocked for Mr. Harris to enter the house. The victim’s grandparent’s room was on another side of the house. There were times when neither the victim’s aunt nor the victim’s father were home at night. M.J. and A.J. testified that they trusted Mr. Harris alone with the children.
M.J. stated that she broke up with Mr. Harris in May 2004, a few weeks before the incident. Although Mr. Harris moved out, he occasionally returned to the residence. Even so, M.J. did not resume the *273 sexual relationship after the break-up although they still spoke to each other.
According to M.J., Mr. Harris no longer lived with her on May 10, 2004 when another incident occurred across the street from her. That incident resulted in Mr. Harris’ arrest on May 10, 2004.
M.J. and A.J. testified that it was not until after Mr. Harris was arrested after being accused of doing something to a young girl across the street that the victim in this case came forward with allegations about Mr. Harris. A.J. explained that when A.J. learned Mr. Harris was accused of sexually assaulting a ten-year-old girl across the street, he asked his children if Mr. Harris ever “molested” them. At that | (¡time, the victim revealed to his stepfather that Mr. Harris had sexually abused him. The victim told him that he did not come forward before then because Mr. Harris threatened to kill his stepfather.
M.J. and A.J. reported the allegations to the police.
The responding officer, Deputy Douglas Graffeo, a patrol deputy with the Jefferson Parish Sheriffs Office, testified that, on May 25, 2004, he responded to 1804 Dogwood, in Harvey, in reference to the victim’s child sexual abuse complaint. Deputy Graffeo interviewed the victim, who informed him that the sexual abuse happened more than once over a couple of months but he did not report it earlier because the suspect threatened his family. In particular, the victim reported to Deputy Graffeo that, on the day before Mr. Harris was arrested for raping a girl at 1805 Dogwood, Mr. Harris brought him in the back room and told him “suck my d* * to which the victim responded in the negative. Mr. Harris then grabbed the victim’s head, put his thumb in the victim’s mouth, pried the victim’s mouth open, placed his penis in the victim’s mouth, and forced the victim to perform fellatio on him.
The victim was referred to Children’s Hospital and Detective Michael Cummings, who was assigned to the personal violence section of the Jefferson Parish Sheriffs Office at the time of the incident, conducted a second interview with the eight-year-old victim at Children’s Hospital. Detective Cummings’ testimony was substantially similar to that of Deputy Graffeo. The victim stated that Mr. Harris removed him from his bedroom in the middle of the night, took him in a room by himself, and asked him to perform oral sex. When the victim refused, Mr. Harris placed his thumb into the victim’s mouth to simulate oral sex; he then withdrew his thumb and inserted his penis into the victim’s mouth. However, the |7victim conveyed to Detective Cummings that he did not report the abuse because he was embarrassed.
M.B., the victim, who was 14 years old at the time of trial, testified that one night in April of 2004 when he was eight years old, while he was sleeping with his siblings, Mr. Harris came in the room, pried the victim’s mouth open (the victim was “gritting his teeth”), Mr. Harris placed his thumb inside of the victim’s mouth, removed his thumb, and inserted his “private part” in the victim’s mouth. The victim testified that Mr. Harris lived with him at the time of the incident and he treated Mr. Harris like an uncle.
On the next night, Mr. Harris, who was naked, brought the victim into his aunt’s room in the back of the house. After lying down on the bed, Mr. Harris told the victim to “suck his d* * *,” and forced the victim to “suck his private part.” Mr. Harris made moaning noises as if it felt good. Mr. Harris offered the victim money to buy a “PlayStation 2,” and threat *274 ened to kill his dad if he told anyone about the incidents.
At trial, the victim did not remember talking to the police after the incident, but he did recall talking to a detective at some point, being examined by the doctor at the hospital, going to counseling, and conducting an interview with a lady in front of a video camera. The victim told the lady that Mr. Harris made him “suck his nuts.” He admitted that he used the terms “nuts,” penis, and “d* * * ” to describe the penis because he thought they were all the same thing. The victim identified Mr. Harris in open court.
The victim consistently testified and reported that the incidents occurred in 2004. However, the victim was inconsistent as to the specific dates. On one hand, the victim testified that the incidents occurred on April 1 and 2, 2004, because April Fool’s Day was one of his favorite holidays when he was younger. The | ¿prosecutor and the defense stipulated, however, that “Terry D. Harris, black male, 2/3/82, was incarcerated in the custody of the Orleans Parish Prison from March 31, 2004 to April 3, 2004.” Thus, April 1 and 2, 2004 occurred during the incarceration. On the other hand, however, the victim also testified that he believed that his father approached him about the incidents in the same month that they occurred. That statement places the date of the incidents in May 2004, which would have been after the incarceration period. Likewise, on May 26, 2004, the victim told Omalee Gordon who was with the Children’s Advocacy Center, that the incidents happened after Easter in 2004. In the jury’s presence, and as requested by the state, the court took judicial notice that in 2004, Easter was on April 11. Thus, the Easter date postdated Mr. Harris’ incarceration.
During the videotaped interview with Omalee Gordon, the victim recounted the forced oral sexual abuse by Mr. Harris. The victim’s videotaped statement was substantially similar to his testimony during trial. Also in his interview with Ms. Gordon, she asked him to draw a picture of the “nuts.” The victim responded with by drawing a picture of an elongated object consistent with a penis.
The day before the Omalee Gordon interview, the victim was examined at Children’s Hospital. At trial, Dr. Scott Benton, an expert in the field of Pediatrics and Pediatric Forensic Medicine examined the victim’s hospital medical records. Dr. Benton testified that the victim’s physical exam was normal; however, a normal exam was not unexpected.
Mr. Harris did not testify. But, in his statement to the police, Mr. Harris denied all of the allegations against him involving both the victim and the allegations of a separate sexual offense involving the girl across the street, L.C.
| ⅞Evidence of Similar Sexual Offense/L.C.
During the instant trial, the state offered evidence of another sexual offense that Mr. Harris had allegedly committed at the residence across the street from the present incident. The other incident stemmed from an aggravated rape charge involving a minor, L.C. Mr. Harris was acquitted on the charges involving L.C. at a previous trial, during which L.C. did not identify Mr. Harris although having previously identified him at the scene. In the instant case, during trial, L.C. identified Mr. Harris as the person who raped her.
Mrs. D., who lived across the street from the victim in this case, testified the L.C. incident occurred on May 10, 2004 around 4:00 AM. At that time, a 10-year-old girl, L.C., was spending the night with her daughter, M.D. Mrs. D. called the police after investigating a noise in the washroom. Someone barred her entry *275 and eventually locked the door. Before the police arrived, her husband chased and struggled with the suspect, who she identified as Mr. Harris, a person she had seen before in the neighborhood as living across the street. Mr. D. testified that he saw Mr. Harris jump over Mr. D.’s fence and then Mr. D. began chasing him across the street. According to Mrs. D., she did not like Mr. Harris because he had inappropriately attempted to befriend her 12-year-old son, a concern her husband also expressed at trial.
Mrs. D. testified that while the struggle took place, L.C. exited the house carrying a kitchen knife. After the police arrived, L.C. identified Mr. Harris at the scene as the person who attacked her. Mr. Harris was dressed in a t-shirt and shorts. According to Mrs. D., the police recovered a skirt at the scene of the struggle that belonged to another daughter. Prior to that, the skirt was located in the washroom’s dryer. To her knowledge, the skirt had not been outside at that location before then. The following day, she discovered a baseball-type shirt and Impossibly a pair of Dickie pants in the washroom that did not belong to anyone in her family. Mr. D. testified that only a shirt was given to the police.
Dr. Adrianne Atzemis, a child abuse pediatrician at Children’s Hospital, testified that she interviewed L.C. on May 10, 2004. Omalee Gordon interviewed L.C. two days later. L.C. told Dr. Atzemis that around 3:00 AM or 4:00 AM on May 10, 2004, a stranger picked her up from her bed and took her to the washroom. The man threatened her, stating that he would stab her and kill her if she said anything to her parents. He pulled off her clothes and told her that if she did not do what he said to do he was going to choke her. He placed her on the floor. He touched her with his hands and tongue in her “privacy part.” When he told her to touch his “privacy” and she refused, the man choked her with his hands around her neck. She stated that “his privacy thing was going like in between [her] legs and [her] privacy part.” She said that he hurt her when he choked her and when his area was going into her area of her body. Then, Mrs. D. approached the washroom and the man ran out of the room. L.C. put on her clothes and took the knife that he threatened her with to Mrs. D.
Dr. Atzemis testified that L.C. disclosed a clear and detailed history of penile-vaginal, digital-vaginal, and oral-vaginal contact by an unknown man. The physical exam was normal except for some signs consistent with the history of choking.
M.J. testified that during sex, Mr. Harris had used “Lifestyle” condoms, at times colored black. The prosecutor and defense counsel stipulated that Henry Jaume, a Jefferson Parish crime technician, would testify that on May 10, 2004, he collected a black condom from 1804 Dogwood that was subsequently submitted for DNA analysis.
| nBonnie Dubourg, an expert in forensic DNA analysis, testified she tested items collected into evidence in the L.C. case. The DNA on the condom was consistent with Mr. Harris’ DNA.
Before L.C. testified, the trial judge gave the following limiting instruction:
Evidence that the Defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show the Defendant’s lustful disposition towards children.
Other crimes evidence shall be proved by clear and convincing evidence in or *276 der to be considered by the jury for any purpose. Such evidence, if proved, may be considered for its bearing on any matter to which it is relevant.
Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.
At this trial, L.C.’s testimony was consistent with her previous statements to sheriffs deputies and Dr. Atzemis that on May 10, 2004, Mr. Harris broke into the residence at 1805 Dogwood Drive, in Harvey, where he picked L.C. up from where she lay sleeping, carried her into the washroom room, performed oral sex on her, vaginally raped her, and, while holding a knife threatened to kill her and her family if she told anyone. L.C. stated that Mr. Harris wore a black condom. L.C. reiterated that Mr. Harris told her to “suck his d** she refused, and Mr. Harris choked her. She testified that Mrs. D. attempted to enter the washroom and Mr. Harris fled. After that, according to L.C. she retrieved the knife and turned it over to the police. L.C. recounted that she identified Mr. Harris at the scene. When asked why she failed to identify Mr. Harris in court at the trial on the L.C. offense, she stated she did not feel comfortable at that time. However, in the instant trial, she made an in-court identification of Mr. Harris. She identified (12the underwear she wore that night as having her blood stain that was not present before the rape.
At the conclusion of L.C.’s testimony, the trial judge gave the limiting instruction a second time.
Analysis

Sufficiency

Mr. Harris was convicted of forcible rape in violation of La.R.S. 14:42.1. Mr. Harris’ main argument is that M.B.’s testimony should not have been believed since uncorroborated contradictory evidence was presented. He contends the victim’s inconsistent statements and testimony are irreconcilable with the physical evidence: the stipulated dates of Mr. Harris’ incarceration. Mr. Harris specifically challenges the M.B.’s statement that the incidents occurred on April 1 and 2 of 2004 and contends he put on evidence to show that it was impossible for him to have sexually abused the victim because he was incarcerated.
As Mr. Harris contends, the record reflects that the victim’s testimony at trial was inconsistent with his statement given to Omalee Gordon on May 26, 2004. At trial the victim testified that the incidents happened on April 1 and 2 of 2004, which included the dates of Mr. Harris’ incarceration. However, in his statement to Oma-lee Gordon, on May 26, 2004, which was taken shortly after the alleged incidents took place, the victim indicated that the incidents occurred after Easter, which was on April 11 in 2004. Moreover, Deputy Graffeo testified that the victim indicated one of the incidents of abuse occurred the night before Mr. Harris was arrested for the incident across the street. At trial, the victim did not recall telling anyone that he was abused on the night before Mr. Harris was arrested. Although the victim testified to different specific dates, his statements were consistent in that the incidents occurred in Spring, 2004.
11sThe jury evidently credited the victim’s testimony that the incidents occurred after the incarceration. The jury could have reasonably determined that the victim’s statement to Omalee Gordon, which was more recent in time to the alleged events in 2004, rather than his trial testimony, which took place five years later, more accurately reflected the specific dates.
*277 Thus, the jury apparently reasonably resolved the inconsistent statements. Having found the absence of internal contradiction or irreconcilable conflict with physical evidence, the jury believed the victim’s testimony — the sole testimony as to the offense. In such a case, where there is an absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66, 79, cert. denied, 543 U.S. 1028, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). Further, in the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. See State v. Tapps, 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 789, where this Court held that the victim’s testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape.
The jury heard all of the evidence regarding the conflicting dates and found the victim was a credible witness. The credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Ho-toph, supra. “The | ^inconsistencies in the witness’s statement are one of any number of factors the jury weighs in determining whether or not to believe a witness’s trial testimony.” Id., (quoting State v. Bender, 598 So.2d 629 (La.App. 3 Cir.1992), writ denied, 605 So.2d 1125 (La.1992)). The Louisiana Supreme Court has made it clear that “the Jackson standard[5] does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial.” State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293 (footnote added).
A review of the record as a whole shows the jury’s determination was reasonable. A rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support the convictions.
Therefore, this assignment of error lacks merit.
In a related assignment, Mr. Harris argues that the other crimes evidence combined with the victim’s inconsistent statements created a substantial, if not a definite risk of luring the jurors into deciding this case on the basis of the defendant’s criminal disposition as opposed to evidence specific to each crime charged, particularly when an acquittal resulted in the L.C. case. We now turn to the assigned error regarding other crimes evidence.

The L.C. Case

In the instant case, the state gave Mr. Harris a notice of intent to introduce evidence of a sexual offense of which the defendant was acquitted (the L.C. case) to show his lustful disposition towards children, under La.C.E. art. 412.2 (to show lustful disposition). The state sought to *278 alternatively introduce the evidence under liijLa.C.E. art. 404(B) (other crimes evidence).[6].[7] At the Prieur hearing that was held on September 2, 2009, the state submitted the entire record in the L.C. case.
In its judgment on September 10, 2009, the trial court found that the state presented clear and convincing evidence of incidents, which were relevant and probative of the occurrence of the crime and of the defendant’s lustful disposition towards children. The court further found that there had been no showing that the value of the similar crimes evidence would be substantially outweighed by the danger of unfair prejudice to the defendant.
First, in his pro se brief, Mr. Harris argues as he did below, that collateral estoppel barred the state from introducing the other crimes evidence because he was acquitted. Mr. Harris asserts that identity was previously decided in his favor in the L.C. trial when L.C. failed to make an in-court identification.[8] In State v. Cotton, 00-850, p. 11 (La.1/29/01), 778 So.2d 569, 578 (citing Dowling v. U.S., 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)), rehearing granted in part for clarification, 00-0850 (La.4/20/01), 787 So.2d 278 (per curiam), the Louisiana Supreme Court held that the constitutional protections of double jeopardy, which included the collateral estoppel doctrine, did not preclude the admission of 404(B) evidence relating to prior sexual offenses of which a defendant had been acquitted, because the state’s burden of proof to show the defendant’s prior bad acts was lower than the state’s burden of proof to show the defendant’s guilt beyond a | ^reasonable doubt. Furthermore, an offer of evidence of a defendant’s prior bad acts for 404(B) purposes does not constitute an attempt to prosecute the defendant for those prior bad acts. Cotton, at 9, 577. It is for this reason that the double jeopardy protection does not apply when the state seeks to introduce acquittal evidence as other crimes evidence under article 404(B). Id. In the instant case, whether the defendant committed the alleged L.C. offense was not an “ultimate issue” that the state was required to prove beyond a reasonable doubt. See: Cotton, at 9, 576. Thus, there was no double jeopardy or collateral estoppel bar.
Second, in his pro se brief, Mr. Harris argues as he did below that the trial court violated his due process rights and rights to confrontation and cross-examination *279 when the court admitted the entire record of the acquittal in the L.C. case at the Prieur hearing. He submits that the Pri-eur hearing was fundamentally unfair and unconstitutional.
In the present case, a Prieur hearing was not required.
Although the state alternatively offered that the prior sex offense was admissible under Article 404(B), the trial court admitted the evidence under Article 412.2 (lustful disposition).
In 2001, the legislature enacted LSA-C. E. art. 412.2(A), which provides:
When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
In State v. Williams, 02-1030, p. 6 (La.10/15/02), 830 So.2d 984, 987, the Louisiana Supreme Court held that La.C.E. art. 412.2 does not require the trial court to conduct an evidentiary (Prieur) hearing prior to ruling on the admissibility |17of evidence or prior instances of sexually as-saultive behavior committed by a defendant.
But even if required, State v. Harris, 08-2117, p. 1 (La.12/19/08), 998 So.2d 55, 56, held that the right to confrontation contained in the United States and the Louisiana Constitutions is not implicated in a pretrial matter. State v. Ayo, 08-468, p. 17 (La.App. 5 Cir. 3/24/09), 7 So.3d 85, 97, writ denied, 09-1026 (La.3/5/10), 28 So.3d 1006.
Thus, this argument lacks merit.
Third, Mr. Harris argues that the trial judge abused his discretion in admitting the evidence because it was hearsay, speculative, and uncorroborated. Also, in both his pro se and counseled briefs, Mr. Harris argues that the L.C. evidence should not have been admitted because its relevance and probative value was outweighed by the prejudice to the defendant, who was acquitted of the crime. Mr. Harris asserts that since more than half of the testimony put forth at the instant trial involved other sexual crimes evidence, this amounted to a retrial of L.C.’s case. He contends that the prejudicial evidence had little relevance and was offered solely to taint his character, thus violating the fundamental rule of other crimes evidence.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes in the past. State v. Nguyen, 04-321, p. 5 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 903, writ denied, 05-0220 (La.4/29/05), 901 So.2d 1064 (citations omitted).
 With that limitation, evidence of a prior sexual offense is admissible if relevant and if the probative value outweighs the prejudicial effect. State v. Mutz, 04-1072, p. 7 (La.App. 5 Cir. 2/15/05), 896 So.2d 1129, 1134, (citing State v. Olivieri, 03-563, p. 19 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218). Rulings on the admissibility of evidence will not be disturbed, absent an abuse of discretion. Id.
Even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the *280 dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. Cotton, supra; La.C.E. art. 403.
Any inculpatory evidence, however, is “prejudicial” to a defendant, especially when it is “probative” to a high degree. State v. Germain, 483 So.2d 110, 118 (La.1983). As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. Id.; See also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (“The term ‘unfair prejudice,’ as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged.”) (Footnote omitted).
In the instant case, the evidence of the prior rape of a juvenile was highly relevant to show Mr. Harris’ lustful disposition towards children. For the same reason it is probative, the evidence was prejudicial to the defendant. See Olivieri, 03-563 at 19, 860 So.2d at 218-19.
In Olivieri, 03-563 at 19, 860 So.2d at 219, this Court held that evidence concerning the defendant’s prior conviction for forcible rape was not so prejudicial as to warrant exclusion in the aggravated rape prosecution where the prior conviction was relevant to show the defendant’s propensity to sexually assault women who tended to matters near their vehicles and to show the defendant’s attempt to kidnap women and drive away in their vehicles. This Court further |1sfound that the evidence was presented in an orderly manner with evidence of the prior rape being presented at the end of trial, thus there was no indication that evidence of the prior rape confused or misled the jury.
Likewise, the evidence of Mr. Harris’ prior sexual offense of which he was acquitted was not so prejudicial as to warrant exclusion from trial. In the instant case, the probative value lies in its ability to show Mr. Harris has a propensity to remove sleeping children from where they lay and commit forced sexual offenses by using threats, thus establishing a lustful disposition towards children. Here, there were striking similarities between the victims and conduct in both cases. Also, Mr. Harris told the police that he did none of the acts of which the victim accused him, making the L.C. incident a crucial piece of evidence to help the jury determine the validity of the victim’s accusations.
Moreover, the trial court did not err in the balancing test. The act involving L.C. was neither speculative nor unclear. Although there was an acquittal, L.C. identified Mr. Harris at the scene. She explained that she did not identify him in court at the L.C. trial because she was uncomfortable. Also, shortly after the disturbance in the washroom, Mr. D. spotted Mr. Harris jumping over his fence and chased him.
Regarding the evidence’s prejudicial effect, the trial court clearly instructed the jurors that they were not to find guilt in this case based on the other sexual offense. Evidence of the L.C. incident therefore did not contribute to the jury’s reaching an improperly based verdict. Our review of the record also confirms that the testimony regarding the prior incident was not so time consuming that it risked distracting the jury from the central issue at trial.
Here, the state presented the testimony of four witnesses regarding the instant case involving the victim, M.B.; then, the state began to introduce |2ntestimony regarding the prior sexual offense involving L.C. After two witnesses testified regarding the other sex crimes evidence, Omalee *281 Gordon testified regarding her interviews with both L.C. and the victim, M.B.; and Dr. Scott Benton testified regarding his review of both of their medical records. The state then resumed introducing testimony regarding the other sexual crimes evidence involving L.C. only. Finally, L.C. testified just before the victim, who was the last witness to testify for the State.
Unlike Olivieri, the L.C. incident was not presented at the end of trial. But these circumstances differ. Here, the testimony and evidence of the other sexual offense demonstrated the chronology of both offenses. The victim in this case did not come forward until after his father learned of the L.C. incident, which occurred across the street. There is no showing that the jury was misled or confused by being apprised of the sequence of the events and in being provided the reason that the victim came forward. There is also no showing that the jury was misled or confused by the volume and presentation of the other sex crime evidence. In this case, the trial court gave a limiting instruction before and after L.C. testified, and in its final instruction. The trial court explained to the jury that it could not convict Mr. Harris of the instant crime just because he may have committed another offense, thus preventing the jury from being lured into determining Mr. Harris’ guilt upon proof of the other sex crime rather than the charged offense. See Old Chief, supra.
In sum, the probative value of the other sexual offense evidence outweighed the danger of unfair prejudice to Mr. Harris. The trial court did not err in admitting the evidence of the L.C. incident.

12iInstruction on Acquittal

Mr. Harris argues that the trial court erred by not including the requested instructions that Mr. Harris was acquitted of the prior sexual offense. Before L.C. testified, defense orally requested that instruction. He also provided a written request.
La.C.Cr. P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The trial court read the acquittal instruction she would give if she decided to add it. However, the jury instructions did not contain that instruction. Thus, the trial judge implicitly denied defense counsel’s request.
The jury, however, heard testimony from L.C. that she did not identify Mr. Harris in court at the L.C. trial. Further, defense counsel brought forth Mr. Harris’ acquittal of the prior sex offense involving L.C., both during L.C.’s cross-examination and in defense counsel’s closing arguments. L.C. testified that she learned Mr. Harris was found “not guilty” by reading it in the newspaper.
Even assuming that the general jury charge was not sufficient, however, the failure to read the special charge is not necessarily reversible. Failure to read a special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. State v. Davis, 00-278, p. 14 *282 (La.App. 5 Cir. 8/29/00), 768 So.2d 201, 211, writ denied, 00-2780 (La.8/31/01), 795 So.2d 1205 (citations omitted). Given L.C.’s testimony that Mr. Harris was found “not guilty,” we find that any failure to give the requested special jury charge did not prejudice the defendant.
Further, this Court has held that where defense counsel brings the matter to the jury’s attention in closing argument, the trial court does not err in refusing to give a requested special jury charge. Id.
Therefore, there is no showing that Mr. Harris was prejudiced by the trial court’s failure to give the requested special jury charge.

Instruction on Burden of Proof

Mr. Harris argues that the trial court erred by not including the requested written instruction that proof of the other sexual offense must be clear and convincing. As previously noted, the trial judge gave the limiting instruction, which included the “clear and convincing” standard twice to the jury — both before and after L.C. testified. She later deleted any reference to the burden of proof.
Before excluding the instruction, the trial court explained that there was a hearing in which it issued a written judgment, specifically finding that the state proved by clear and convincing evidence at the Prieur hearing that the testimony was admissible. The court further declared that once the evidence was ruled admissible, “the jury takes it as they find it, and they determine whether or not — or how to use it from this point.” Thus, she determined that the judge rather than the jury must determine the admissibility of this evidence.
On appeal, Mr. Harris argues he was prejudiced by the failure to give the “clear and convincing” burden of proof in the final instructions because the failure to state the burden of proof caused the jury to incorrectly focus on the L.C. incident rather than the instant offence. To the extent that his arguments regarding prejudice pertain to the admissibility of the evidence, these were previously ^addressed. For purposes of the jury instruction, we discern no prejudice. The jury was told three times that the defendant was on trial only for the offense charged and the jury “may not find him guilty of this offense merely because he may have committed another offense.” There is no reasonable likelihood under the instructions given that the jury would conclude it could convict Mr. Harris of the current offense solely because it found that he had committed a similar prior sexual offense. The jury charges did not allow the jury to convict Mr. Harris merely because he may have committed another offense.[9]

Motion to Quash

Mr. Harris’ motion to quash the indictment for untimely commencement of trial was filed September 14, 2009 and denied on October 2, 2009.
Under La.C.Cr.P. art. 578(A)(2) the state had two years from the institution of prosecution to commence trial, which was September 9, 2006. Mr. Harris had not yet proceeded to trial when he filed his motion to quash on September 14, 2009, about three years beyond the two-year prescriptive period. Barring any suspension or interruption of the time delay (See, *283 La.C.Cr.P. arts. 579 (interruption), 580 (suspension)), the delay lapsed.
The State has a heavy burden of justifying an apparently untimely commencement of trial on grounds that the time limits in La.C.Cr.P. art. 578 were either interrupted or suspended. State v. Joseph, 93-2784 (La.6/3/94), 637 So.2d 1032, 1032.
La.C.Cr.P. art. 580 provides that the time limitation is suspended when a defendant files a motion to quash or other preliminary plea. “When a defendant files a motion to quash or other preliminary plea, the running of the periods of ^limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.” Article 580. A preliminary plea is any pleading or motion filed by the defense which has the effect of delaying trial. State v. Brooks, 02-792 (La.2/14/03), 838 So.2d 778, 782. These pleadings include properly filed motions to quash, motions to suppress, or motions for a continuance, as well as applications for discovery and bills of particulars. Id. Oral motions to continue, made by the defense or jointly with the state, can also suspend the period of limitation. State v. Jordan, 00-1508 (La.App. 5 Cir. 11/27/01), 802 So.2d 933, 936. (citations omitted). Also, a preliminary plea includes a motion for a preliminary examination. State v. Dillon, 06-488, p. 5 (La.App. 5 Cir. 11/28/06), 947 So.2d 86, 89.
In his counseled brief, Mr. Harris argues that the period was not suspended as the state claimed. Mr. Harris disputes two motions to continue that were attributed to him on March 2, and July 13, 2009. He further argues that his reason for the continuance on July 13th was because the state gave him oral notice of its intent to introduce other crimes evidence at that hearing and he was unprepared to defend against the Prieur issues. He asserts that the two continuances should not be attributed to him, and there were no outstanding defense motions or preliminary pleas which would have suspended the time limits, thus the motion to quash should have been granted.
Contrary to Mr. Harris’ assertions, there is nothing in the record that reflects that the trial court ruled on his motion for a preliminary examination. The record reveals that Mr. Harris filed the motion for a preliminary examination on January 6, 2005, when the time delay had not lapsed. He did not file a written motion to withdraw his motion for a preliminary exam. At the November 9, 2007 ^suppression hearing, defense counsel stated that the motions to suppress the identifications and evidence were moot because there were no identifications made or evidence seized in the case. Defense counsel made no other comment regarding any other outstanding motion in the instant case. The only indication in the record before us that he was no longer pursuing the motion was about two years later at the hearing on September 2, 2009. At that time, defense counsel stated that all motions in the case had been previously completed since November of 2008 (apparently referring to the earlier suppression hearing) and that although a motion hearing was set for September 4, 2009, it was unnecessary^ Thus, on September 2, 2009 counsel orally withdrew his pending motion for preliminary examination.[10] If counsel’s statements are viewed as a with *284 drawal of the motion on September 2, 2009, then the state had no less than a year or until September 2, 2010 to try the case. Thus, trial, which commenced on December 15, 2009, was timely.
If, however, there was an earlier withdrawal implicit at the November 9, 2007 ruling on the suppression motion, the state had no less than one year or until November 9, 2008 to try the case. There were joint continuances, however, within that time period on December 3, 2007, January 11, 2008, and May 12, and 15, 2008. Thus, the state had until May 15, 2009 to try the case. Within that period, however, Mr. Harris moved to continue on June 6, 2008, thus the state had until June 6, 2009. On March 2, 2009, the defense moved for a continuance and the state had until March 2, 2010. Thus, trial, which commenced on December 15, 2009, was timely.
On appeal, Mr. Harris disputes two motions to continue on March 2, and July 13, 2009. The July 19, 2009 motion is irrelevant. By July 13, 2009, the 12(idefense had already moved for and was granted a continuance on March 2, 2009. That motion extended the delay making trial timely. Furthermore, at the hearing on the motion to quash defense counsel admitted that on March 2, 2009 he moved to continue trial.
Accordingly, the assignment lacks merit.

ERROR PATENT

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our error patent review reveals an indeterminate sentence.
The trial judge vacated the sentence on the underlying offense, La.R.S. 14:42.1, and imposed the enhanced habitual offender 76-year sentence. The habitual offender statute, La.R.S. 15:529.1(G), provides that any sentence imposed under its provisions “shall be at hard labor without benefit of probation or suspension of sentence.” Thus, the habitual offender statute does not impose a parole restriction. Nevertheless, the underlying offense in the reference statute, La.R.S. 14:42.1, imposes a parole restriction. It requires that at least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence. “[T]he restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 ‘are those called for in the reference statute.’ ” State v. Tate, 99-1483, pp. 1-2 (La.11/24/99), 747 So.2d 519, 520 (per curiam), citing State v. Bruins, 407 So.2d 685, 687 (La.1981). Thus, in sentencing under the habitual offender statute, the trial judge was required to impose a minimum two-year parole restriction as called for in the reference statute.
At sentencing, the trial judge first imposed the habitual offender sentence without mentioning any statutory restrictions. After defense counsel noted his objection to the sentence, the trial judge informed Mr. Harris of the appeal and [27post-con-viction delays. After so stating, she remanded Mr. Harris to DOC and said:
It’s without benefit of probation or suspension. It’s parole, probation or suspension of sentence.
A trial court must impose a determinate sentence. La.C.Cr.P. art. 879. In this case, the trial judge did not indicate the number of years of parole ineligibility.[11] Mr. Harris’ sentence, which states generally that the sentence must be served *285 without parole eligibility, is vacated and this case is remanded to the district court with instructions to resentence Mr. Harris to a determinate sentence which specifies the extent of parole disability in a fixed number of years. See: State ex rel Dawson v. Ballard, 460 So.2d 595 (La.1984) (“Case remanded for reimposition of a fully determinate sentence as to duration of period without benefit of parole.”).
Conclusion
For the reasons stated, we affirm the conviction, vacate the sentence, and remand for resentencing.

CONVICTION AFFIRMED; SENTENCE VACATED, REMANDED FOR RESENTENCING.

. State v. Prieur, 277 So.2d 126 (La.1973).

. The victim's initials, and those of certain family members, are used under the authority of La.R.S. 46:1844(W)(3), which allows the Court to protect the identity of a crime victim who is a minor or a victim of a sex offense by using his or her initials.

. The November 9, 2007 transcript reflects that the court held a combined hearing, taking up as well, the motions in another case, 04-4258, charges of aggravated rape of a female juvenile and aggravated burglary. Defense counsel states in brief that Mr. Harris was charged with two other, separate cases: the aggravated rape of L.C. and carnal knowledge of a juvenile (K.H.). The state elected to go to trial in L.C.'s case on May 12, 2009. After Mr. Harris was acquitted in an 11 to 1 decision, the state went forward with the instant case.

. During sentencing, the trial court first informed Mr. Harris that he was required to renew his registration every six months, then later informed him that he was required to update his registration every year. The written notification, which Mr. Harris signed, however, properly reflects that he was required to update his registration every six months. Moreover, the written notification reflects Mr. Harris' certification that he received the written notice and a copy of the pertinent statutes.

. The constitutional standard for testing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

.La.C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

. The state sought to introduce evidence of two alleged sexual offenses, which the court allowed into evidence. However, at trial, the state only introduced evidence as to one of these, the L.C. case.

. In his pro se brief, Mr. Harris also argues that allowing L.C. to identify Mr. Harris in court in the instant case after failing to do so at her trial, was in fact presentation of false testimony depriving him of a fair trial. We disagree. Contrary to Mr. Harris’ assertions, L.C. had previously identified Mr. Harris at the scene. Moreover, Mr. D. spotted Mr. Harris jumping his fence shortly after the disturbance in the washroom. Thus, we find that the juiy was not misled by hearing false testimony.

. Furthermore, we note that the text of Article 412.2 is silent as to the appropriate standard for admitting evidence of past acts of sexual assault. We need not determine the appropriate burden for admissibility of the evidence because in any event, the absence of a "burden of proof" instruction in the final charge did not prejudice Mr. Harris.

. Apparently the discovery motions were satisfied before defense counsel filed the discovery motions. The minutes for November 15, 2004 reflect that discovery had been provided to the prior attorney and the state was providing duplicate discovery to current defense counsel.

. We further note that the minute entry/commitment does not provide for any parole restriction.