WICKER, J.
IsDefendant, Gary G. Rodgers, appeals his convictions and sentences for aggravated rape and sexual battery upon a juvenile. In his counseled brief, Defendant argues that the trial court erred in denying Defendant’s Batson challenge during jury selection, that the evidence presented at trial was insufficient to support the jury verdicts, and that the consecutive sentences imposed are excessive. Defendant additionally filed pro se supplemental briefs arguing that the trial court erred in failing to sequester the jury and admitting evidence of other sexual offenses. For the reasons that follow we find no merit in Defendant’s counseled or pro se assignments of error. Accordingly, we affirm Defendant’s convictions and sentences.
PROCEDURAL HISTORY
On March 1, 2012, a Grand Jury for Jefferson Parish returned a true bill of indictment charging Defendant with aggravated rape of a victim under the age of thirteen years, in violation of La. R.S. 14:42, and sexual battery upon a juvenile, in violation of La. R.S. 14:43.1. At his March 5, 2012 arraignment, Defendant pled not guilty. On September 18, 2013, following a finding that Defendant was competent to stand trial, Defendant withdrew his not guilty plea and entered a plea of not guilty by reason of insanity. Subsequently, a sanity commission recommended Defendant be found sane at the time of the offense.
On April 28, 2015, trial commenced before a twelve-person jury. During jury selection, defense counsel lodged several Batson objections which were denied by the trial court. On April 30, 2015, the jury found Defendant guilty on both counts. Defendant filed a motion for new trial, which the trial court heard and denied on June 8, 2015. On that same day the trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the aggravated rape conviction and sixty years imprisonment at hard 14labor with the first twenty-five years to be served without benefit of probation, parole, or suspension of sentence on the sexual battery conviction. The trial court further ordered that Defendant serve his sentences consecutively. Defense counsel made a general oral objection to the court's sentence. On that same day the trial court granted Defendant’s motion for appeal, which he had previously filed along with his motion for new trial. Defendant’s appeal follows.
FACTS
This case arose in May of 2011 after the minor victim, “Jane,”[1] reported to family members that Defendant raped her years earlier while Defendant, an extended family member, stayed at Jane’s family’s home.
At trial, Jane’s, step-grandmother, “Barbara,” testified that in late May of 2011, *1193 Jane, who was ten years old at the time, and her cousin, “Kathy,” were playing together at Barbara’s home in LaPlace, Louisiana, when the two children began arguing. To determine the cause of the argument, Barbara instructed both girls to write down their problems and show them to Barbara. Jane testified that she had previously told Kathy a secret and she saw what she thought was Kathy whispering her secret to Barbara, so Jane wrote down the secret herself. On the note that Jane presented to Barbara, Jane had .written, that “Gary” had made her touch his “private” and raped her when she was at her “old house” and had told Jane not to tell “/all.” Barbara testified that Jane was very upset and crying after revealing this “secret,” and asked Barbara not to tell Jane’s parents because she wanted to wait to tell them when she was an adult.
Upon learning more details about the incident from Jane, Barbara called her son, “Robert,” Jane’s stepfather and Defendant’s paternal first cousin. Robert then contacted Jane’s mother, “Connie,” and the couple picked Jane up and brought hereto River Parish Hospital in LaPlace, where they were referred to Children’s Hospital in New Orleans.
Ann Troy, a forensic nurse practitioner qualified as an expert in child maltreatment, physical abuse, and sexual abuse, interviewed and examined Jane at the Audrey Hepburn Care Center at Children’s Hospital. Ms. Troy testified that Jane was “spontaneous and gave [her] a clear and detailed history, that Gary took her off of her top bunk bed, laid her oh the floor, made her touch his penis, and put his penis in her vagina.” Ms. Troy’s transcript of the interview with Jane indicates that Jane referred to her assailant’s penis as his “private part” and her vagina as her “pee pee.” Jane further told Ms. Troy that during the incident her younger brother was sleeping in the bottom bunk bed and her younger cousin, “Amy,” was sleeping next to her in the top bunk, and that she saw Defendant touch Amy’s “butt” soon after the night she was raped. Jane also reported to Ms. Troy that she got sad at times when her parents argued and that sometimes her father punched her mother, a claim that was controverted at trial by Jane’s parents, Connie and Robert.
Officer Bryan Wetter of the Kenner Police Department testified that, on June 22, 2011, he was called to the lobby of the police station to handle a complaint made by Jane’s family. After interviewing Jane and the other members of her family, he reported to Detective Joseph McRae that Jane had reported being anally raped by a member of her family when she was seven years old.
A video was introduced at trial of an interview conducted by Suzanne Jolissaint, a forensic interviewer at the Jefferson Children’s Advocacy Center .(hereinafter, “CAC”), on June 28, 2011. Erika Dupepe, the Director of the CAC, testified at trial that Ms. Jolissaint lived in Connecticut at the time of tidal but that all of the CAC’s procedures were followed in conducting the interview. During the interview, which was being monitored simultaneously from a separate, room by Detective McRae, Jane told the interviewer that one night when she lived at her old I Bhouse in Kenner she was in the top bunk bed in her bedroom, while her cousin Amy slept next to her and her brother slept below, when Defendant entered the room. Jane told the interviewer that Defendant took her off of her bunk bed and made- her touch his “private.” Jane then told the interviewer that she was lying on-the floor on her side, with Defendant in the same position behind her, when he “humped her,” explaining that his “private ... went back and then he went forward ... real real hard between [her] butt.” Afterwards, Jane told the interview *1194 er that her “butt” was wet and that it “hurted.” Throughout much of the interview, Jane spoke quietly and seemed to cry.
During her testimony, Jane, who was fourteen at the time of trial, testified that when she was seven years old and living with her family in a two-bedroom home in Kenner, Louisiana, she and her brother shared a room with bunk beds. During that time her father’s cousin, Defendant, stayed at the family’s home on the sofa. Jane testified that one night, when she and her brother, but not Amy, were in their bedroom, Defendant came into the bedroom, picked her up from the top bunk bed, grabbed her hand and made her touch his “private part” “underneath the clothes.” Jane testified that Defendant also “put his private part in [her] butt,” and that it felt wet and slimy. After Defendant stopped, he put Jane back in her bed, told her to go to sleep and not to tell anyone what had happened. Jane also testified that on a different night she saw Defendant touch Amy’s “butt.”
When questioned at trial as to why Jane had reported that Defendant penetrated her vagina to Ms. Troy at the CAC when she later claimed that he had penetrated her anus, Jane testified that she had been confused by repeated questioning and really meant her “butt.” On cross-examination, Jane could not recall reporting that her father punched her mother but admitted that she must have made it up in her earlier statement.
|7Ann Troy was also questioned at trial regarding the inconsistencies among Jane’s reports and testified that part of the “delayed disclosure” process common to child victims of sexual abuse is slowly disclosing more details and changing minor details as their memory develops and they mature. Ms. Troy further testified that children, and even many teenagers, she has encountered are very confused about their own anatomy and have trouble distinguishing between their own orifices.
At trial Detective McRae testified that he noticed the discrepancies between Jane’s first report to the CAC and her subsequent reports. Detective McRae stated that in his experience, such inconsistencies in similar cases were not uncommon and that after he spoke with Jane he was able to clear up the inconsistencies. Detective McRae testified that Jane also identified Defendant as her rapist in a photographic lineup. Detective McRae further testified that after contacting “Louise”, the mother of Amy, he received a call from Louise wherein she told the detective Amy had reported that Jane had told her that someone had touched her.
Amy, and Amy’s mother, Louise, both testified at trial. Amy, who was twelve years old at the time of the trial, testified that she did not remember staying at Jane’s house in Kenner when Amy was approximately five years old. Amy said, that while she did remember speaking with police officers in 2011, she could not recall what she said. Louise testified that Amy never reported being touched inappropriately and when Louise asked her, Amy said she could not remember.
The State then called “Jenny,” a twelve year old girl, who testified that on October 13, 2010, when she was nine years old, she was playing at a playground near her aunt’s house when she saw a man on the balcony of a nearby apartment pull his pants down and begin “moving his hand back and forward,” while touching “his private.” Jenny testified that she then told her mother and aunt, who called the police. Detective Kay Horne of the Jefferson Parish Sheriff’s Office testified that on October 13, 2010, she responded to an obscenity complaint, where |sshe met with “Alice,” Jenny’s aunt, who was deceased at the time of trial. Detective Horne spoke *1195 with Jenny who told her she saw a black male with his shorts and boxers pulled down and his penis exposed and heard him say, after licking his lips, “I like me some little red girls.” Detective Horne testified that Defendant told her that he had been outside smoking a cigarette when several young girls approached him and asked if he was “trying to pick them up.” Detective Horne testified that Alice signed the back of a photographic lineup on Defendant’s photo but a conclusive identification of Defendant as the person whom Jenny witnessed was not introduced at trial. Detective Horne testified that the District Attorney had refused charges against Defendant.
LAW AND ANALYSIS

Counseled Assignments of Error

In his second counseled assignment of error, Defendant argues that the trial court erred in denying his motion for a new trial because the evidence presented by the State was insufficient to support the convictions. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hea-rold, 603 So.2d 731, 734 (La. 1992). When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. Id. Therefore, the sufficiency of the evidence is addressed before Defendant’s other assignments of error.
Defendant argues that inconsistencies among Jane’s various statements and contradicting testimony from other witnesses undermine Jane’s allegations and testimony. In support of this assignment, Defendant cites the variations between Jane’s statement at Audrey Hepburn Child Care Center and her statements to |9police, at the CAC, and at trial regarding which orifice Defendant penetrated. Defendant also points out that Jane reported to interviewers that her cousin, Amy, was present in the bedroom on the night of the crime yet testified at trial that Amy was not present, and that Jane’s claim that Defendant inappropriately touched Amy was controverted by Amy and Amy’s mother, Louise. Defendant further relies on Jane’s report of physical violence by Robert against her mother, Connie, which was controverted by Connie, to impugn Jane’s veracity.
A motion for a new trial is based on the supposition that injustice has been done to the defendant, and unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. C.Cr.P. art. 851. The trial court’s ruling on a motion for a new trial will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle, 06-898 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied, 07-1067 (La. 11/21/07), 967 So.2d 1154. On motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. La. C.Cr.P. art. 851(1). When a motion for a new trial is based on the verdict being contrary to the law and the evidence, there is nothing for review on appeal. State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888, writ denied, 05-1760 (La. 2/10/06), 924 So.2d 163. However, both the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. Id. Therefore, the denial of Defendant’s motion for a new trial based on the sufficiency of the evidence can be addressed by this Court on review.
*1196 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a | ^reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. Indeed, a reviewing court errs by substituting its appreciation of thé evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Cajfrey, 15 So.3d at 202. The resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert, denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the' testimony of one witness, if In believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, unit denied, 08-0987 (La. 1/30/09), 999 So.2d 745. With sexual offenses, the victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not. introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Perkins, 11-162 (La.App. 5 Cir. 12/28/11), 83 So.3d 250, 255
In the case at bar, Defendant was convicted of aggravated rape of á victim under the age of thirteen years, in violation of La. R.S. 14:42(A)(4), and sexual battery upon a known juvenile, in violation of La. R.S. 14:43.1. La. R.S. 14:42(A)(4) defines aggravated rape as follows:
A. Aggravated rape is a rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed, to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
[[Image here]]
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.
La. R.S. 14:41 defines rape as “the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent .... *1197 Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.” La. R.S. 14:43.1 provides, in pertinent part:
A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, directly or through clothing, when any of the following occur:
(2) The victim had not yet attained fifteen years of age and is at least three years younger than the offender.
At trial, Jane testified that, on the night of the incident, Defendant was staying at her family’s home in Kenner, where he often spent the night on their sofa. Jane related that Defendant entered her room that night while her brother | i¡»slept in the bottom bunk bed below her. According to her trial testimony, Defendant proceeded to pick up Jane from her bed, forced her to touch his penis with her hands, and penetrated her anus with his penis. Undisputed testimony from other family members established that at the time the family lived in the Kenner home, Jane was approximately seven years old.
The State presented testimony from numerous witnesses, to whom Jane reported the events, and the inconsistencies emphasized by Defendant were presented clearly and repeatedly to the jury throughout the trial. When questioned regarding her varying accounts of which orifice was penetrated, Jane explained that she had been confused by repeated questioning and admitted her mistake at trial. She further testified that she did not recall her statement regarding her father punching her mother but admitted that she must have lied when she reported that claim. At trial, Jane also testified that she witnessed Defendant inappropriately touch her cousin, Amy, and though Amy did not confirm this allegation in her own testimony, her mother,- Louise, testified that when asked whether this occurred, Amy could not recall due to her age of approximately five years old at the time of the alleged incident.
Despite minor variations among the numerous statements Jane gave during interviews, all of her reports consistently-recounted sufficient facts to prove each element of the crimes charged against Defendant, i.e., that Defendant sexually penetrated either Jane’s vagina or anus while she was under the age of thirteen years old and intentionally forced Jane to touch his penis. Moreover, an expert specializing in physical and sexual abuse of children testified that it is not uncommon for girls of Jane’s age or even older to experience confusion regarding their own anatomy, and that often details within a child’s account of abuse tend to vary due to a child’s development as they mature and the typical process by which children disclose sexual abuse.
In State v. Singleton, 05-622 (La.App. 5 Cir. 1/31/06), 922 So.2d 647, 650-651, this Court affirmed a defendant’s aggravated rape conviction despite inconsistencies among statements made by the victim pri- or to trial. The defendant pointed out that in an earlier statement to her mother the eleven year old victim claimed that the defendant touched her yet alleged penetration at trial and in every other statement to investigators and medical personnel. Id. at 649-650. The Court found that despite some inconsistencies, the victim consistently, through statements, ■ interviews, and testimony, described the details of the incident and maintained that defendant raped her. Id. at 651. Ultimately, the *1198 Court concluded, the trier of fact made a credibility determination, which the Court would not reassess on appeal. Id. ■
Likewise, here we find that the State presented sufficient evidence to prove each element of the crimes charged beyond a reasonable doubt. The jury was presented with the evidence, including the alleged inconsistencies and contradictions of which Defendant is aggrieved, and found Defendant guilty 'as charged. Clearly, the jury chose to accept the uncontroverted, consistent portions of Jane’s testimony in spite of any alleged inconsistencies therein. It is the province of the trier of fact, not this Court, to evaluate the credibility of witnesses and weigh the evidence. Accordingly, we find no error in the jury’s verdict and thus no error in the trial court’s denial of Defendant’s motion for new trial. This assignment lacks merit.
In his first counseled assignment of error, Defendant argues that the State improperly exercised peremptory challenges against prospective jurors based on race, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He argues that defense counsel made a prima facie showing that the State engaged in a discriminatory pattern of striking African American jurors due |14to their race and the trial court failed to require that the State provide race-neutral reasons for each peremptory challenge.
In Batson, the United States Supreme Court held that an equal protection violation occurs when a party uses a peremptory challenge to exclude a prospective juror on the basis of race. Id. If the challenger makes a prima facie showing of discriminatory strikes, the burden shifts to the opposing-party to offer racially-neutral explanations for the challenged juror. This second part of the process does not require the State to give an explanation that is plausible, or even persuasive; so long as it is not inherently discriminatory. Purkett v. Mem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 884 (1995) (per curiam).
If a race-neutral reason is given, the trial court must then decide whether the challenger has proven purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. at 1724. This third and final step in the Batson analysis involves an examination of the credibility of the State’s “race-neutral” reasons, but the ultimate burden of persuasion as to racial motivation in exercising a peremptory challenge rests with, and never shifts from, the opponent of the challenge. Purkett, 514 U.S. at 768, 115 S.Ct. at 1771; Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).
To establish a prima facie case, the defendant must show: (1) the prosecutor’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. State v. Massey, 11-357 (La.App. 5 Cir. 3/27/12), 91 So.3d 453, 468, writ denied, 12-993 (La. 9/21/12), 98 So.3d 332 (citing State v. Sparks, 88-17 (La. 5/11/11), 68 So.3d 435). If the trial court determines the defendant failed to establish the threshold requirement of a Imprima facie case, then the analysis is at an end and the burden never shifts to the prosecutor to articulate neutral reasons. Massey, 91 So.3d at 468.
However, a trial judge’s demand that a prosecutor justify his peremptory strikes is tantamount to a finding that the defense has produced enough evidence to support an inference of discriminatory purpose. Id. If the prima facie showing is made, the burden shifts to the prosecutor *1199 to present a race-neutral explanation for striking the juror in question. Id. In any case, after the State offers a race-neutral explanation for the peremptory challenge, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing becomes moot. Id.
Whether there has been intentional racial discrimination is a question of fact. State v. Scott, 04-1312 (La. 1/19/06), 921 So.2d 904, 921, cert. denied, 549 U.S. 858, 127 S.Ct. 137, 166 L.Ed.2d 100 (2006). The trial court’s evaluations of discriminatory intent are to be accorded great deference on review, and should not be reversed unless they are clearly erroneous. State v. Snyder, 98-1078 (La. 9/6/06), 942 So.2d 484, 488.
The record reflects that, after peremptorily challenging two white jurors, the State used its third, fourth, and fifth peremptory strikes to excuse African American jurors from the first panel of jurors without objection from Defendant. Before challenging jurors from the second panel, the State used backstrikes to strike two more African American jurors from the first panel of jurors, and defense counsel objected, apparently on the basis that a pattern of discrimination was developing. The trial judge found no such pattern. The State then exercised peremptory challenges to strike a white juror followed by an African American juror from the second panel. Again defense counsel objected and the trial judge found no pattern of discrimination in the State’s peremptory challenges. After the State- exercised another peremptory challenge to excuse an African American juror, |1fidefense counsel objected and the trial judge asked the prosecutor its reason for its most recent peremptory strike. The State responded that the most recent juror was excused because her father was serving a life sentence in Angola for a crime which was prosecuted in Jefferson Parish and that she had voiced discontent with the Kenner Police Department. The trial judge found the prosecutor’s reasoning to be race-neutral and proceeded with jury selection. The record does not reflect any further Batson objections from defense counsel.
The racial makeup of the jury ve-nires and the empaneled jury is not available in the record. However, such information, standing alone, would not establish a prima facie case of discriminatory intent in the State’s use of peremptoiy challenges. State v. Duncan, 99-2615 (La. 10/16/01), 802 So.2d 533, 549. In Duncan, the Louisiana Supreme Court reasoned that “[s]uch number games ... are inconsistent with the inherently fact-intense nature of determining whether the prima facie requirement has been satisfied,” and that “absolute, per se rules are inconsistent with Batson in which the Court instructed trial courts to consider ‘all relevant circumstances.’ ” Id. at 550. Accordingly, a' defendant has the burden of establishing facts on the record in' support of a prima facie finding of purposeful discrimination. Id; See also State v. Holand, 11-974 (La. 11/18/11), 125 So.3d 416.
Regarding the trial court’s first two denials of Defendant’s Batson objections, the record is devoid of any indication as to the overall racial makeup of the jury venires or the empaneled jury. Defendant has pointed to no additional evidence of a discriminatory purpose in the State’s use of peremptory challenges. Accordingly, we find no error in the trial court’s finding that Defendant had not established a pri-ma facie case to shift the burden to the State.
Turning to Defendant’s third Bat-son objection, we find no error in the trial court’s finding that the State provided a *1200 race-neutral reason for excluding the juror. 117A juror who has a family member with a criminal ■ record is a race-neutral explanation. State v. Wilson, 09-170 (La.App. 5 Cir. 11/10/09), 28 So.3d 394, 404 n.4, writ denied, 09-2699 (La. 6/4/10), 38 So.3d 299 (citing State v. Baker, 34,973 (La.App. 2 Cir. 9/26/01), 796 So.2d 145, 154).
Though not articulated explicitly, defense counsel seemed to be objecting on the basis that the State’s pattern of peremptory strikes was intentionally discriminatory against African Americans. Thus, the trial judge’s demand that the prosecution state its reasons for their strike could have provided grounds for Defendant to demand that the State provide a race-neutral reason for every strike prior to its last Batson objection. However, the trial judge accepted the State’s explanation and continued voir dire without further objection from Defendant. A Defendant waives review of irregularities in the selection of the jury when an objection is not timely raised. State v. Oderibaugh, 10-268 (La. 12/6/11), 82 So.3d 215, 245; La. C.Cr.P. art. 841. Thus, we find no error in the trial judge’s denial of Defendant’s Batson objections.
Accordingly, we find this assignment lacks merit.
In his third counseled assignment of error, Defendant argues that the consecutive nature of his sentences is excessive.
While the record reflects that Defendant orally objected to his sentences, he did not specifically raise the issue of the consecutive nature of his sentences, nor did he file a written motion to reconsider the sentences. Failure to file a motion to reconsider sentence or to state the specific grounds upon which the motion is based limits a defendant to a bare review of the sentence for unconstitutional excessiveness. State v. Ross, 13-924 (La.App. 5 Cir. 5/28/14), 142 So.3d 327, 333.
Defendant does not contend that any sentence on its own is excessive. Rather, he argues that the consecutive nature of his sentences makes them | ^excessive. This Court has held that when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the review for unconstitutional excessiveness and the defendant is precluded from raising the issue on appeal. Id. Accordingly, we find Defendant is precluded from challenging as excessive the consecutive nature of his sentences.

Pro Se Assignments of Error

In his first pro se assignment of error, Defendant argues that the trial court erred in failing to sequester the jury after being sworn.
This Court reviews only those issues which were submitted to the trial court, unless the interest of justice clearly requires otherwise. U.R.C.A.R. 1-3. The record is devoid of any written or oral motion to sequester the jury by either party, nor has Defendant shown how he was prejudiced by the lack of sequestration of the jury. Accordingly, we decline to review this assignment of error.
In his second pro se assignment of error, Defendant argues that the trial court erred in admitting the testimony of Jenny and Detective Kay Horne regarding a past sexual offense.
La. C.E. art. 412.2 provides, in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the-accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and *1201 may be considered for its bearing on any matter to which it- is relevant subject to the balancing test provided in Article 403.
B, In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request' of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because he has committed other such crimes | ]9⅛ the past. State v. Nguyen, 04-321 (La.App. 5 Cir. 9/28/04), 888 So.2d 900, 903, writ denied, 05-0220 (La. 4/29/05), 901 So.2d 1064.
With that limitation, evidence of a prior sexual offense is admissible if relevant and if the probative value outweighs the’prejudicial effect. State v. Mutz, 04-1072 (La. App. 5 Cir. 2/15/05), 896 So.2d 1129, 1134, (citing State v. Olivieri, 03-563 (La.App. 5 Cir. 10/28/03), 860 So.2d 207, 218). Rulings on the admissibility of evidence will not be disturbed absent an abuse of discretion. Id.
Even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403. Any inculpatory evidence, however, is “prejudicial” to a defendant, especially when it is “probative” to a high degree. State v. Germain, 433 So.2d 110, 118 (La. 1983). As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. Id.; See also Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (“The term ‘unfair prejudice,’ as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged.”) (Footnote omitted).
In State v. Eiger, 13-69 (La.App. 5 Cir. 10/30/13), 128 So.3d 552, this Court affirmed a trial court’s admission of evidence of prior sexual molestation in a prosecution for aggravated rape of an eight year old. The Court in Eiger found that the testimony of a victim of unadjudicated child molestation that occurred while the defendant was between eleven and fourteen years old and the victim was between the ages of five and eight years old was highly relevant to show the defendant’s lustful disposition and that, given the victim’s similarities in age, the probative value of the evidence was not substantially outweighed by the danger of |anunfair prejudice. Id. at 559. The Court reasoned that any potentially undue or unfair prejudice was mitigated by the trial court’s clear jury instruction and the defendant’s ability to cross-examine the victim of the prior molestation. Id.
Similarly, in State v. Harris, 11-253 (La. App. 5 Cir. 12/28/11), 83 So.3d 269, unit denied, 12-401 (La. 8/22/12), 97 So.3d 376, this Court held that evidence of a defendant’s prior rape of a juvenile, of which he was acquitted, was admissible in a later prosecution for aggravated rape of a juvenile. The Court found that evidence of the prior rape of a juvenile was highly relevant to show the defendant’s lustful disposition toward children. Id. at 280. The Court also found that the evidence was not unduly and unfairly prejudicial, because the trial court clearly instructed the jurors that they were not to find guilt in the case based on evidence of other sexual offenses, the testimony regarding other acts was not so time-consuming as to risk distracting *1202 the jury from the central issue at trial, and the evidence was presented in an orderly manner, with evidence of the prior rape being presented at the end of the trial, indicating that the jury was not misled or confused. Id.
In the instant case, the evidence of the other sexual offense was highly relevant and probative of Defendant’s charges, in that it showed Defendant’s lustful disposition towards children, specifically girls of a similar young age. Moreover, the evidence in the instant case was presented in a clear, orderly manner. Testimony from Jenny and Detective Horne regarding the prior sexual offense followed the conclusion of the State’s evidence related to the instant offense. The testimony was not so time-consuming as to risk distracting the jury from the charges at issue at the trial, and the witnesses were subject to cross-examination during which defense counsel clearly showed the jury that the evidence was not related to the instant case. At the close of the trial, the trial judge instructed the jury that the evidence of other crimes served a limited purpose and |¾1 that Defendant could not be convicted for any crimes other than those charged. In sum, the probative value of the other sexual offense evidence was not substantially outweighed by the danger of unfair prejudice.
Accordingly, we find no error in the admission of evidence of other sexual offenses.
ERROR PATENT
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Wetland, 556 So.2d 175 (La. App. 5 Cir. 1990).
The record indicates that the trial court failed to observe the 24-hour delay between denying Defendant’s motion for new trial and sentencing, as required by La. C.Cr.P. art. 873. However, we find that Defendant waived the sentencing delays required by La. C.Cr.P. art. 873.
In State v. Scott, 249 La. 20, 184 So.2d 542 (1966), the Louisiana Supreme Court held that an affirmative action indicating a waiver of the provisions of La. C.CivP. art. 873 was necessary. In State v. Morton, 12-27 (La.App. 5 Cir. 5/31/12), 97 So.3d 1034, 1045, writ denied, 12-1476 (La. 1/18/13), 107 So.3d 625, this Court found that a defendant waived sentencing delays when, following denial of his motions to arrest judgment and for new trial, defense counsel affirmatively responded to the trial court that the defendant was ready for sentencing.
The record in this case indicates that after the trial court denied defendant’s motion for new trial, the victim’s father made a statement requesting Defendant receive a lesser sentence, after which defense counsel acknowledged the mandatory sentence and stated that Defendant was “prepared at this time to be sentenced.” We find that defense counsel’s affirmative statement that Defendant was ready for sentencing constitutes a valid waiver of the sentencing delay required by La. C.Cr.P. art. 873 and no corrective action is necessary.
.[^conclusion
Upon review of the record we find no merit in Defendant’s assignments of error. Accordingly, we affirm Defendant’s convictions and sentences.
AFFIRMED

. To preserve the confidentiality of the minor victim’s identity in this case, we shall refer to the victim, the victim’s family members, and other related witnesses by fictitious names, pursuant to La. R.S. 46:1844(W).